Jay THOMAS and Dean
Thomas, Appellants,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Appellee.

No. 91–624.

Supreme Court of Iowa.

May 13, 1992.

Dennis F. Chalupa, John Terpstra, and Terry Rickers, Newton, for appellants.

Ronald M. Rankin and Harry Perkins, III of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO and ANDREASEN, JJ.

LAVORATO, Justice.

In this law action, two insureds seek payment from their insurer under two motor vehicle policies providing uninsured and underinsured coverage. The uninsured provisions obligate the insurer to pay damages on any accident caused by the owner or operator of a vehicle which is insured by an insurer that is insolvent or becomes insolvent. This insolvency provision, unlimited as to time, is different from Iowa Code section 516A.3 (1985). Section 516A.3 limits uninsured coverage to insolvencies occurring within one year after the accident.

In this case, the tortfeasor's insurer became insolvent more than one year after the accident. Under these facts, the insureds argued to the district court that the statute barred their uninsured motorist claims, leaving them, instead, with underinsured motorist claims under the policies. The district court thought otherwise and sustained the insurer's motion for summary judgment. We agree with the district court and affirm.

The facts are essentially undisputed. Jay Thomas was injured when a car in which he was a passenger left the road and struck a traffic signal device in Ankeny. The accident happened on August 8, 1986. At the time Jeffrey Smith was driving the car which belonged to his mother, Judy.

At the time of the accident Jay was covered by two separate insurance policies

owned by his father, Dean. American Family Mutual Insurance Company had issued the policies. Each policy (1) covered bodily injuries suffered by Jay as a passenger in any vehicle operated by another person, (2) contained both uninsured and underinsured motorist provisions, and (3) contained a "per person" limit of $50,000 under each provision.

Jay and Dean sued the owner of the car, the driver, and the city of Ankeny. Ultimately, the suit was settled against all three defendants. The owner of the car and the driver paid Jay $50,000. The city paid Jay and his parents $250,000.

Following this settlement, Jay and Dean made a demand on American Family for the maximum underinsurance limits afforded by each policy ($100,000 total). American Family refused to pay. This prompted Jay and Dean to file this lawsuit. In responding to American Family's interrogatories, Jay alleged his damages exceeded $2 million.

Jay and Dean have appealed from the district court's summary judgment ruling that disposed of these underinsured motorist claims against American Family.

■ I. Our review is at law. Iowa R.App.P. 4. Summary judgment is proper if the only issue facing the district court concerns the legal consequences flowing from undisputed facts. *Brown v. Monticello State Bank,* 360 N.W.2d 81, 84 (Iowa 1984).

II. The goal of uninsured motorist coverage is "to ensure minimum compensation to victims of uninsured motorists." *Veach v. Farmers Ins. Co.,* 460 N.W.2d 845, 848 (Iowa 1990). In contrast, the goal of underinsured motorist coverage is "full compensation to the injured party to the extent of damages sustained." *McClure v. Northland Ins. Cos.,* 424 N.W.2d 448, 450 (Iowa 1988). Stated another way, the difference between uninsurance and underinsurance is that

> uninsurance is designed to establish a minimum amount which a victim may recover when injured by a person with less liability insurance than that required by Iowa Code section 321A.1(10). Under-

insurance coverage, on the other hand, is designed to make the victim whole. *Id.*

We have recognized that the legislature intended these coverages to be complimentary. *American States Ins. Co. v. Tollari,* 362 N.W.2d 519, 522 (Iowa 1985). For different reasons, they protect against the risk of loss caused by a tortfeasor who is not financially responsible.

The coverage status of the tortfeasor determines which insurance coverage of the victim—uninsured or underinsured—applies. We resolve this question by reviewing the applicable statutory language and the language of the victim's policy.

■ An uninsured tortfeasor is one who has "no liability insurance at all to pay the loss." *Tollari,* 362 N.W.2d at 522. If the tortfeasor is deemed uninsured, then the injured party's uninsured motorist coverage is exposed. In this situation we have adopted the narrow coverage view. *Northland,* 424 N.W.2d at 449–50. We determine only "whether the insured will receive minimum compensation as set by statute." *Veach,* 460 N.W.2d at 848.

■ Conversely, an underinsured tortfeasor is one who has "[liability] insurance in an amount insufficient to cover the possible loss." *Detrick v. Aetna Casualty & Sur. Co.,* 261 Iowa 1246, 1253, 158 N.W.2d 99, 105 (1968). If the tortfeasor is deemed underinsured, the victim's underinsured motorist coverage is exposed. In this situation we have adopted the broad coverage view, *Northland,* 424 N.W.2d at 449–50, and inquire "[whether] the victim will be fully compensated," *Veach,* 460 N.W.2d at 848. In each case, we look to see if the goal of the victim's applicable insurance will be met.

With these principles in mind, we look at the statutory and policy language at issue here to determine the coverage status of the owner of the car and its driver, the tortfeasors.

III. The relevant statutory provision is Iowa Code section 516A.3. The applicable version pertinently states:

516A.3. Definition.

For the purpose of this chapter, the term "uninsured motor vehicle" shall ... be deemed to include an insured motor vehicle with respect to which insolvency proceedings have been instituted against the liability insurer thereof....

An insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect and *only if the liability insurer of the tortfeasor is insolvent at the time of such an accident or becomes insolvent within one year after such an accident.*

(Emphasis added.) (A 1991 amendment eliminated the one-year extension; however, the amended version is not at issue in this appeal. Iowa Code § 516A.3 (Supp. 1991).)

■ The American Family policies here pertinently state that "[w]e will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an *uninsured motor vehicle.*" An uninsured motor vehicle under the policies *includes* a motor vehicle that is "[i]nsured by a bodily injury liability bond or policy at the time of the accident but the company denies coverage *or is or becomes insolvent.*" Jay and Dean think this last policy provision as to insolvency violates section 516A.3 and for that reason is ineffective. Under this reasoning, they argue their uninsured motorist claims are therefore converted to claims for underinsured motorist coverage.

If Jay and Dean are correct, they would be entitled to recover the total underinsured coverage of $100,000 without offsetting the $300,000 in settlements. This assumes, of course, that their claim of total damages in the area of $2 million plus is accurate.

On the other hand, if the provisions of the policies regarding insolvency do not violate section 516A.3, Jay and Dean are clearly left with uninsured motorist claims. The limits of liability provisions in the policies prevent stacking of uninsured motorist benefits under multiple policies. Under our cases this is permissible. *See Westhoff v. American Interinsurance Exch.,* 250 N.W.2d 404, 409 (Iowa 1977); *McClure v. Employers Mut. Casualty Co.,* 238 N.W.2d 321, 326 (Iowa 1976). What is available, then, is $50,000 in uninsured motorist coverage. Jay and Dean received $50,000 from the owner and operator of the uninsured motor vehicle. According to the limits of liability provisions of the policies, this $50,000 must be offset against the $50,000 of uninsured motorist benefits otherwise available. Such an offset is likewise permissible under our cases. *See Northland,* 424 N.W.2d at 450; *Kluiter v. State Farm Mut. Auto Ins. Co.,* 417 N.W.2d 74, 76 (Iowa 1987); *Davenport v. Aid Ins. Co.,* 334 N.W.2d 711, 714–15 (Iowa 1983). So Jay and Dean would be entitled to no further benefits if the insolvency provisions in the policies are valid.

Contrary to their argument, this is not a case where the policy provisions contravene the statute, rendering the policy language ineffective. *Davenport,* 334 N.W.2d at 712. American Family is not narrowing the coverage it is required by law to provide. Rather, as the district court wisely noted, the language of the policies enhances the minimum insolvency time limit imposed by section 516A.3 and extends the period during which victims may collect under their uninsured motorist coverages:

The only difference between the statutory definition of "uninsured motor vehicle" and the policy definition of "uninsured motor vehicle" is that the polic[ies do] not limit the term of insolvency to one year. Rather, the polic[ies expand] the definition to any period of time [in] which the liability insurer becomes insolvent. This expansion in coverage actually works to extend the protection granted by the legislature....

. . . .

While the court sympathizes with the plaintiffs' plight, it cannot ignore the plain language of the legislature in section 516A.3. The legislature obviously desires to protect people who are involved in accidents with someone who has an insolvent liability insurer by al-

lowing those persons to look to their uninsured motorist coverage. American Family's polic[ies allow] the plaintiffs to do that, to an extent even greater than that provided in the statute. Because the polic[ies are] in direct line with the legislative intent in section 516A.3, the court finds the polic[ies] to be valid.

In sum, we find that the legislature intended a mandatory minimum time frame during which a victim is guaranteed recovery from the victim's own uninsured motorist policy if the tortfeasor's insurer becomes insolvent. Insurers are free to extend this protection. If they do, the one-year minimum in section 516A.3 is not incorporated into the policy so as to deny an insured uninsured motorist coverage.

So we conclude the one-year limitation regarding insolvency in section 516A.3 was not incorporated into the two policies here so as to limit uninsured motorist coverage otherwise afforded by the policies. Instead, the policies afforded coverage in addition to that required by section 516A.3. Our conclusion disposes of Jay's and Dean's argument that the one-year limitation regarding insolvency in section 516A.3 barred their uninsured motorist claims and therefore converted these claims into ones for underinsurance. We doubt that Jay and Dean would be making this argument had the tortfeasors themselves been insolvent and had there been no underinsured coverage. .

Our position is in line with what one insurance commentator thinks on this issue:

[W]hen the insurance policy uses coverage language that provides that a vehicle is uninsured if the liability insurer "is or becomes insolvent" without specifying any period of time, the uninsured motorist claim may not be barred even though the period specified in the statute has passed.

When an uninsured motorist insurance policy includes coverage for insolvencies, but does not specify a time limit, the time period prescribed in the statute may not be incorporated into the coverage terms. Courts could decide that the statute only establishes the minimum level of coverage, and that insurance companies are free to provide more favorable or extensive coverage. Several courts have applied this analysis, holding that when uninsured motorist coverage states that insurance is provided in the event of an insolvency and does not place a time limit with respect to the occurrence of an insolvency, the uninsured motorist coverage was more extensive than required by the statute. The courts concluded that in this situation, an insured is not barred from asserting a claim under the uninsured motorist coverage even though the insolvency occurred after the time specified in the statute had passed.

1 Alan Widiss, *Uninsured and Underinsured Motorist Insurance* § 8.17, at 388 (2d ed. 1990), *accord Utah Property & Casualty Ins. Guar. Ass'n v. United Servs. Auto. Ass'n,* 230 Cal.App.3d 1010, 1020–21, 281 Cal.Rptr. 917, 923 (1991).

Our construction of the statute and the policies also squares with the reasonable expectations of an ordinary policy purchaser. *Houselog v. Milwaukee Guardian Ins.,* 473 N.W.2d 52, 54 (Iowa 1991) (in arriving at the reasonable expectations of the insured, we construe an insurance contract from the viewpoint of a layperson, not one who possesses special expertise). We think an ordinary policy purchaser would understand the uninsured motorist coverage here would be triggered if the tortfeasor's insurer was insolvent at the time of the accident or became insolvent while the original claim was pending. We also think it would be unreasonable to assume that an ordinary policyholder would know of the statutory limit imposing a lesser time frame. As a sister court has aptly recognized:

Laypersons cannot be expected to know of statutory limitations or exclusions on coverage not contained in their insurance policies. Trusting the language of their policies, laypersons will not seek coverage they think they have. Thus, should statutes be allowed to narrow or limit coverage otherwise provided by a policy, the net result would be unanticipated

gaps in coverage or, ultimately, a failure of financial responsibility.

*Utah Property & Casualty Ins. Guar. Ass'n,* 230 Cal.App.3d at 1021, 281 Cal. Rptr. at 923. A failure of financial responsibility is, of course, directly contra to the purpose underlying chapter 516A.

IV. Because the district court correctly construed section 516A.3 and the policies here, it properly sustained American Family's motion for summary judgment on the uninsured motorist issue. Our resolution of this issue renders moot the remaining issues Jay and Dean raise in this appeal.

Finding no error, we affirm.

AFFIRMED.