NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Plaintiff v. STATE
FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant

No. 9215SC1017

(Filed 2 August 1994)

1. **Insurance § 522 (NCI4th)— insolvency of liability insurer
—limitation of action—minimum period set by statute**

The three-year limitation provided in N.C.G.S.
§ 20-279.21(b)(3)(b) sets out a minimum period of time during
which insolvency protection must be afforded and which may be
extended by agreement between the insurer and insured, rather
than establishing the latest time at which an insured may claim
uninsured motorist coverage following insolvency of the tortfea-
sor's liability carrier.

**Am Jur 2d, Automobile Insurance § 319.**

2. **Insurance § 522 (NCI4th)— insolvency of liability insurer
—uninsured motorist claim—no time specified for filing
claim—statutory limit not controlling**

Under an insurance policy providing that a vehicle is unin-
sured if the liability insurer "is or becomes insolvent" without
specifying any period of time, an uninsured motorist claim may
not be barred even though the minimum period specified in
N.C.G.S. § 20-279.21(b)(3)(b) has elapsed.

**Am Jur 2d, Automobile Insurance § 319.**

3. **Insurance § 522 (NCI4th)— insolvency of liability insurer
—claim for uninsured motorist coverage—accrual of claim**

Plaintiff's claim against defendant for uninsured motorist
coverage as a consequence of insolvency of the tortfeasor's insur-
er accrued on the date tortfeasor's insurer was declared insolvent
rather than the date of the accident so that plaintiffs' action com-

N.C. INS. GUARANTY ASSN. v. STATE FARM MUT. AUTO. INS. CO.

[115 N.C. App. 666 (1994)]

menced less than two months after declaration of insolvency was well within the three-year limitation period.

**Am Jur 2d, Automobile Insurance § 319.**

Appeal by defendant from order signed 20 July 1992 in Alamance County Superior Court by Judge J. Milton Read, Jr. Heard in the Court of Appeals 27 September 1993.

*Moore & Van Allen, by Joseph W. Eason, Christopher J. Blake, and Louis S. Watson, Jr., for plaintiff-appellee.*

*Frazier, Frazier & Mahler, by James D. McKinney and Torin L. Fury, for defendant-appellant.*

JOHN, Judge.

In this declaratory judgment action, defendant appeals the trial court's allowance of plaintiff's motion for judgment on the pleadings. We affirm the trial court.

All factual and procedural information necessary to a resolution of defendant's appeal is essentially uncontroverted. On 25 March 1987, Lisa H. Cooke incurred personal injuries when the vehicle driven by her husband, Raymond Cooke, collided with an automobile operated by Curtis B. Vance (Vance). Defendant had previously issued the Cookes an automobile liability insurance policy (the policy) which included uninsured motorist coverage. Interstate Casualty Insurance Company (Interstate) had issued an automobile liability insurance policy to Vance.

On 8 March 1990, the Cookes sued Vance seeking damages as a result of injuries received in the collision. On 9 April 1990, an "Order of Liquidation" was entered in Wake County Superior Court declaring Interstate insolvent. Plaintiff fulfilled its statutory duty under the Insurance Guaranty Association Act (Act), N.C.G.S. § 58-48-1, *et seq.*, by defending Vance in the action filed by the Cookes.

On 31 May 1990, the Cookes amended their complaint to include a claim against defendant under the uninsured motorist provisions of the policy. In its answer, defendant admitted all factual allegations, but denied plaintiffs were entitled to coverage. On 24 January 1992, plaintiff and defendant agreed to settle the Cookes' suit against Vance and defendant by respective payments of $6,000 to the Cookes. Both

plaintiff and defendant reserved the right to seek contribution from the other for the sum each had advanced to the Cookes in settlement.

On 28 February 1992, plaintiff filed the instant declaratory judgment action attempting to recover the amount paid the Cookes. The trial court granted plaintiff's motion for judgment on the pleadings. On appeal, defendant argues the claim asserted by the Cookes against it was barred by the limitation contained in N.C.G.S. § 20-279.21(b)(3)(b) (1993) and by the applicable statute of limitations, and that the trial court therefore erred by allowing plaintiff's motion. We disagree.

Under N.C.R. Civ. P. 12(c) (1990), a party moving for judgment on the pleadings has the burden of showing no material issues of fact exist and that it is entitled to judgment as a matter of law. *Whitaker v. Clark*, 109 N.C. App. 379, 381, 427 S.E.2d 142, 143, *disc. review denied*, 333 N.C. 795, 431 S.E.2d 31 (1993). All facts and permissible inferences must be viewed in the light most favorable to the nonmoving party. *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).

I.

According to defendant, because Interstate was declared insolvent more than three years after the automobile collision in question, the provisions of G.S. § 20-279.21(b)(3)(b) operate to bar recovery by the Cookes under the policy issued them by defendant and consequently also bar plaintiff's claim for reimbursement.

G.S. § 20-279.21(b)(3)(b), included within the Financial Responsibility Act (FRA), provides in pertinent part:

An insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tort-feasor becomes insolvent within three years after such an accident. Nothing herein shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to the insured than is provided herein.

G.S. § 20-279.21(b)(3)(b).

A.

[1]  We first consider whether the three-year limitation provided in G.S. § 20-279.21(b)(3)(b) establishes the latest time at which an

insured may claim uninsured motorist coverage following insolvency of the tort feasor's liability carrier (thus barring plaintiff from seeking reimbursement), or rather (as plaintiff contends) sets out a minimum period of time during which insolvency protection must be afforded and which may be extended by agreement between the insurer and insured.

The mandatory coverage of the FRA was enacted to protect innocent victims injured by financially irresponsible motorists. *Insurance Co. v. Chantos*, 293 N.C. 431, 439, 238 S.E.2d 597, 603 (1977). "The provisions of the Financial Responsibility Act are 'written' into every automobile liability policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail." *Id.* at 441, 238 S.E.2d at 604. Further, policy provisions that extend coverage, as opposed to those that create exceptions to coverage, are construed to provide coverage "wherever, by reasonable construction, it can be [done]." *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 78 N.C. App. 542, 549, 337 S.E.2d 866, 870 (1985), *aff'd*, 318 N.C. 534, 350 S.E.2d 66 (1986).

The statute establishes a required minimum period of time when insolvency protection must be afforded, but, as the unambiguous language of the section reveals, an insurer may afford further protection "under terms and conditions more favorable to the insured." G.S. § 20-279.21(b)(3)(b). Any reasonable construction of this language leads to the inescapable conclusion that while the General Assembly has 1) prescribed the minimum time period within which insolvency protection must be provided, it also 2) has expressly permitted an insurer to include within a policy coverage which extends beyond the mandated minimum term.

B.

[2] We therefore next examine whether defendant agreed to provide more favorable protection to the Cookes than afforded by G.S. § 20-279.21(b)(3)(b). The terms of the insurance policy at issue control this determination, *Roseboro Ford, Inc. v. Bass*, 77 N.C. App. 363, 366, 335 S.E.2d 214, 216 (1985), and define an "uninsured motor vehicle" as a "land motor vehicle or trailer of any type: . . . to which a liability bond or policy applies at the time of the accident but the bonding or insuring company: a. denies coverage b. is or becomes insolvent."

Terms of an insurance contract must be given their plain, ordinary, and accepted meaning unless they have acquired some technical meaning or it is apparent another meaning was intended. *Williams v. Insurance Co.*, 269 N.C. 235, 238, 152 S.E.2d 102, 105, (1967). In addition, policies are to be accorded a reasonable interpretation, and, if not ambiguous, should be construed according to their terms and the ordinary and plain meaning of their language. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 6 N.C. App. 277, 280, 170 S.E.2d 72, 74 (1969), *rev'd on other grounds*, 276 N.C. 348, 172 S.E.2d 518 (1970). If ambiguous, the language of a policy is to be construed strictly against the insurer and liberally in favor of the insured. *Brown v. Insurance Co.*, 35 N.C. App. 256, 259, 241 S.E.2d 87, 88 (1978).

The State Farm policy in the case *sub judice* provides uninsured motorist coverage if the bonding or insuring company which issued a liability bond or policy applicable "at the time of the accident" denies coverage or "is or becomes insolvent." It is undisputed that on 25 March 1987, the date of the collision between the Cookes and Vance, Interstate insured Vance, and that on 9 April 1990, Interstate was declared insolvent.

Defendant contends it afforded no insolvency protection beyond the statutory minimum required by G.S. § 20-279.21(b)(3)(b). Plaintiff responds that the language "is or becomes insolvent" demonstrates defendant agreed to provide coverage in addition to that mandated by the statute. We determine plaintiff's interpretation to be correct.

The phrase "is or becomes insolvent" contemplates two occasions of insolvency. The first, represented by "*is* insolvent," refers to insolvency existing at the time of collision. The second, described by "*becomes* insolvent" refers, as the definition of "becomes" reveals, to insolvency occurring some time following the accident. "Become" is defined as: "to come to exist or occur." Webster's Third International Dictionary 195 (1976).

The policy phraseology "is or becomes insolvent" contains no ambiguity. Further it contains no time limitation. Giving the words a reasonable interpretation based upon their plain and ordinary meaning, *Wachovia Bank & Trust Co.*, 6 N.C. App. at 280, 170 S.E.2d at 74, we therefore conclude defendant by utilizing this wording agreed to furnish coverage beyond the three years mandated in G.S. § 20-279.21(b)(3)(b). Accordingly, we hold that under an insurance policy providing that a vehicle is uninsured if the liability insurer "is or becomes insolvent" without specifying any period of time, an unin-

sured motorist claim may not be barred even though the minimum period specified in G.S. § 20-279.21(b)(3)(b) has elapsed. By including such language, the insurer agreed to afford coverage under terms and conditions more favorable to the insured than required by the statute.

Our holding is consistent with a majority of jurisdictions which have considered this issue. *Utah Property and Casualty Ins. Guar. Ass'n v. United Services Auto. Ass'n,* 281 Cal. Rptr. 917 (Cal. Ct. App. 1991); *Kentucky Ins. Guar. Ass'n v. State Farm Mut. Auto. Ins. Co., 689 S.W.2d 32 (Ky. Ct. App. 1985); Thomas v. American Family Mut. Ins. Co.,* 485 N.W.2d 298 (Iowa 1992); *Government Employees Ins. Co. v. Burak,* 373 So.2d 89 (Fla. Dist. Ct. App. 1979). See generally Alan I. Widiss, Uninsured and Underinsured Motorist Insurance, § 8.16, at 385 (2d ed. 1992), for a discussion of insolvent liability insurance companies and time limits.

In *Kentucky Ins. Guar. Ass'n,* for example, State Farm had issued an automobile liability insurance policy to Donald and Vickie Clark who were involved in a 22 January 1979 collision with D.L. Curry. Curry was insured under a policy issued by Kenilworth Insurance Company (Kenilworth). In April 1982, Kenilworth was declared insolvent. The State Farm policy defined an uninsured motor vehicle as: "A land motor vehicle . . . with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies that there is any coverage thereunder or is or becomes insolvent." The Kentucky Insurance Guaranty Association Act provided in relevant part:

> Protection against an insurer's insolvency shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within one (1) year after such an accident. Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder.

Ky. Rev. Stat. Ann. § 304.20-020(3). The Kentucky Court of Appeals concluded that the one-year limitation period defined a minimum period after collision during which uninsured motorist coverage protecting against insolvency of a tortfeasor's insurer must be provided. The court further held, based upon the policy language, that State Farm agreed to provide uninsured motorist coverage more favorable than the statutory minimum.

Additionally, in *Utah Property and Casualty Ins. Guar. Ass'n,* Alice Lopiccolo died on 22 May 1983 when the vehicle driven by her husband struck a stalled tractor-trailer. Mr. & Mrs. Lopiccolo were insured by defendant United Services Automobile Association (USAA) under a policy providing uninsured motorist coverage. An "uninsured motor vehicle" was defined therein to include a vehicle to which insurance applied at the time of the accident, but the insuring company "is or becomes insolvent." Plaintiff Guaranty Association assumed the coverage provided by Enterprise Insurance Company (Enterprise), a Utah insurance company which became insolvent in February 1987. Enterprise had issued an automobile liability insurance policy to the business which employed the driver of the tractor-trailer. California's Insurance Code defined an "uninsured motor vehicle" as a vehicle for which liability insurance has been obtained, but the insurer has become insolvent. Cal. Ins. § 11580.2 (b)(2). Subdivision (b)(2) also stated that "[a]n insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's motor vehicle coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within one year of the accident." The California Court of Appeals held that, the statute notwithstanding, a straightforward reading of the policy issued by USAA led to the conclusion that if insurance was in effect at the time of collision, then the insured vehicle would be covered in the event the insurer became insolvent at some point in the future without time limitation.

## II.

**[3]** In its final argument, defendant maintains plaintiff cannot recover because the Cooke's claim against defendant was barred by the three-year statute of limitations set out in N.C.G.S. § 1-52(1) (1993). The parties agree the section contains the period of limitation applicable to this action. However, the dispositive question is when the statute of limitations began to run. Defendant insists that date is 25 March 1987, when the Cookes were injured. We disagree.

A statute of limitations begins to run when the cause of action accrues. *Insurance Co. v. Rushing,* 36 N.C. App. 226, 228, 243 S.E.2d 420, 422 (1978). A cause of action accrues when the injured party is at liberty to sue. *Id.*

In *Rushing,* plaintiff, the workers' compensation insurance carrier for defendant's employer, mistakenly paid defendant on 30 October

**N.C. INS. GUARANTY ASSN. v. STATE FARM MUT. AUTO. INS. CO.**

[115 N.C. App. 666 (1994)]

1972 double the amount of compensable recovery she was entitled to receive. On 18 February 1975, the Industrial Commission, as a result of the error, set aside its previous order and reduced defendant's award by half. On 22 June 1976, plaintiff carrier commenced an action seeking recovery of the excess amount paid defendant Rushing. Defendant asserted the three-year statute of limitations as a bar, arguing plaintiff's cause of action accrued 30 October 1972, the date of payment. However, this Court held it was only upon modification of the Industrial Commission award on 18 February 1975 that defendant acquired a legal right to recover the overpayment and was "at liberty to sue." *Id.* at 228, 243 S.E.2d at 422. Therefore, defendant's right of action accrued upon that date. *Id.*

Similarly in the case *sub judice*, the Cookes were not "at liberty" to assert a claim against defendant State Farm for uninsured motorist coverage as a consequence of "insolvency of the tortfeasor's insurer" until 9 April 1990, the date Interstate was declared insolvent. Therefore, the Cookes' cause of action against defendant accrued 9 April 1990, and on that date the statute of limitations set out in G.S. § 1-52(1) began to run. On 31 May 1990, well within the three-year limitation period, the Cookes amended their complaint to include an uninsured motorist coverage claim against defendant. Accordingly, we hold the Cookes' action against defendant was timely filed and that plaintiff is not barred by the statute of limitations contained in G.S. § 1-52(1) from recovering the amount paid the Cookes in settlement of their claim against defendant.

Based on the foregoing, the trial court properly determined plaintiff to have shown no material issues of fact existed and that it was entitled to judgment as a matter of law. The court's allowance of plaintiff's motion for judgment on the pleadings is therefore affirmed.

Affirmed.

Chief Judge ARNOLD and Judge WYNN concur.