# IN THE COURT OF APPEALS OF TENNESSEE,
## AT JACKSON

**FILED**

**December 18, 1998**

Cecil Crowson, Jr.
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **JOHN HOGINS**, | ) | Hardeman County Circuit Court |
|  | ) | No. 8708 |
| Plaintiff, | ) |  |
|  | ) |  |
| **And** | ) | C.A. No. 02A01-9804-CV-00102 |
|  | ) |  |
| **TENNESSEE INSURANCE** | ) |  |
| **GUARANTY ASSOCIATION**, | ) |  |
|  | ) |  |
| Intervening Plaintiff/Appellant, | ) |  |
|  | ) |  |
| VS. | ) |  |
|  | ) |  |
| **TONY ANDREW ROSS, WARNER** | ) |  |
| **ROSS and UNITED STATES FIDELITY** | ) |  |
| **& GUARANTY COMPANY**, | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |

From the Circuit Court of Hardeman County at Savannah
**Honorable Jon Kerry Blackwood, Judge**


**William D. Leader, Jr.**,
**Julie C. Murphy**,
BOULT, CUMMINGS, CONNERS & BERRY, PLC, Nashville, Tennessee
**Jef Feibelman**,
**Melissa A. Maravich**,
BURCH, PORTER & JOHNSON, Memphis, Tennessee
Attorneys for Intervening Plaintiff/Appellant Tennessee Insurance Guaranaty Association.


**James A. Hopper**, HOPPER & PLUNK, Savannah, Tennessee
Attorney for Defendant/Appellee United States Fidelity & Guaranty Company.

**John Knox Walkup**, Attorney General & Reporter
**Michael E. Moore**, Solicitor General
**Sarah A. Hiestand**, Senior Counsel
For Tennessee Department of Commerce and Insurance

OPINION FILED:

**REVERSED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Tennessee Insurance Guaranty Association (TIGA), the intervening plaintiff in this action, appeals the trial court's order entering summary judgment in favor of Defendant/Appellee United States Fidelity & Guaranty Company (USF&G). We reverse the trial court's judgment based on our conclusion that the court erred in ruling that USF&G's policy did not provide uninsured motorist coverage to Plaintiff John Hogins.

On August 2, 1994, John Hogins was involved in a motor vehicle accident when his Jeep collided with a vehicle which was driven by Defendant Tony Andrew Ross and owned by Defendant Warner Ross. At the time of the accident, Hogins was covered by an automobile liability insurance policy issued by USF&G which, as pertinent to this appeal, contained the following definition of "uninsured motor vehicle:"

> C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
>
> . . . .
>
> 4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company;
>
> . . . .
>
> b. is or becomes insolvent.

Hogins timely sued the Rosses for the injuries he allegedly suffered as a result of the accident. In December 1996, however, while this lawsuit was pending, the Rosses' automobile liability insurance carrier, Coronet Insurance Company, was found to be insolvent by an Illinois state court. As required by the Tennessee Insurance Guaranty Association Act, TIGA subsequently assumed the responsibilities of Coronet in this lawsuit to the extent of its obligation on "covered claims," as defined by the Act. *See* T.C.A. §§ 56-12-104, -107 (1994).

Although TIGA assumed Coronet's rights and duties to the extent of its obligation on covered claims, the Act required Hogins first to exhaust his right to coverage under his USF&G policy. *See* T.C.A. § 56-12-111 (1994). Accordingly, Hogins was required to seek coverage under the uninsured motorist provisions of the USF&G policy before he could recover from TIGA for any

covered claims.

In July 1997, USF&G filed a motion for summary judgment, contending that the uninsured motorist provisions of its policy provided no coverage to Hogins because Coronet was found to be insolvent more than one year after the August 1994 accident. In support of this argument, USF&G relied upon the following statutory provision:

> **56-7-1203. Insolvency protection limitation -- More favorable protection not precluded. --** An insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect *where the liability insurer of the tort-feasor becomes insolvent within one (1) year after such an accident.* Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder.

T.C.A. § 56-7-1203 (1994) (emphasis added). Citing the same statutory provision, TIGA also moved for summary judgment, contending that it was entitled to a judgment as a matter of law on the issue of whether the statute's minimum time limit for insurers to provide insolvency protection was incorporated into the uninsured motorist provisions of USF&G's automobile liability insurance policy.

After conducting a hearing, the trial court granted USF&G's motion for summary judgment and denied TIGA's motion. The trial court ruled that

> pursuant to the provisions of [T.C.A.] § 56-7-1203, the automobile liability insurance policy issued to the Plaintiff, John Hogins, by [USF&G] does not provide uninsured/underinsured motorists coverage to John Hogins for injuries received in the accident of August 2, 1994 because Coronet Insurance Company, the individual defendants' automobile liability insurance carrier, was declared insolvent more than one year following the accident forming the basis of this lawsuit.

The trial court dismissed with prejudice all claims against USF&G and directed the entry of a final judgment as to USF&G. *See* T.R.C.P. 54.02.

On appeal, TIGA contends that, contrary to the trial court's ruling, the insolvency protection of USF&G's policy was not limited to the one-year minimum limit set forth in section 56-7-1203. TIGA points out that, although the statute provides that such protection shall be applicable only when the tortfeasor's liability insurer becomes insolvent within one year after the accident, the statute also expressly permits insurers to afford more favorable coverage. TIGA argues that, by providing uninsured motorist coverage when the insuring company "is or becomes insolvent," without limiting such coverage to a certain time period, USF&G has agreed to extend its insolvency protection beyond the one-year time period set forth in the statute.

We agree. As noted by TIGA and by the Court of Appeals of North Carolina, the majority of jurisdictions which have considered this issue have held that, by using the phrase "is or becomes insolvent" to describe the insolvency protection provided by an automobile liability insurance policy's uninsured motorist provisions, an insurer extends such insolvency protection beyond the time period specified in the applicable statute. *North Carolina Ins. Guar. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 446 S.E.2d 364, 368 (N.C. Ct. App. 1994). Although the North Carolina statute mandated insolvency protection for a three-year period, the remainder of the statute's language was virtually identical to the statute at issue here. *Id*. at 366 (citing N.C. Gen. Stat. § 20-279.21(b)(3)(b)). In that case, the insurer, State Farm, also had issued a policy which defined an "uninsured motor vehicle" as "a land motor vehicle or trailer of any type" to which a "liability bond or policy applies at the time of the accident but the bonding or insuring company . . . *is or becomes insolvent*." *Id*. at 367 (emphasis added). In holding that State Farm, by including such a provision in its policy, agreed to afford coverage under terms and conditions more favorable to the insured than required by the statute, the court reasoned:

> Terms of an insurance contract must be given their plain, ordinary, and accepted meaning unless they have acquired some technical meaning or it is apparent another meaning was intended. . . . In addition, policies are to be accorded a reasonable interpretation, and, if not ambiguous, should be construed according to their terms and the ordinary and plain meaning of their language. . . . If ambiguous, the language of a policy is to be construed strictly against the insurer and liberally in favor of the insured. . . .
>
> . . . .
>
> The phrase "is or becomes insolvent" contemplates two occasions of insolvency. The first, represented by "is insolvent,"

refers to insolvency existing at the time of collision. The second, described by "becomes insolvent" refers, as the definition of "becomes" reveals, to insolvency occurring some time following the accident. "Become" is defined as: "to come to exist or occur." ***Webster's Third International Dictionary*** 195 (1976).

The policy phraseology "is or becomes insolvent" contains no ambiguity. Further it contains no time limitation. Giving the words a reasonable interpretation based upon their plain and ordinary meaning, . . . we therefore conclude [that State Farm] by utilizing this wording agreed to furnish coverage beyond the three years mandated in [the statute]. Accordingly, we hold that under an insurance policy providing that a vehicle is uninsured if the liability insurer "is or becomes insolvent" without specifying any period of time, an uninsured motorist claim may not be barred even though the minimum period specified in [the statute] has elapsed. By including such language, the insurer agreed to afford coverage under terms and conditions more favorable to the insured than required by the statute.

***North Carolina Ins. Guar. Ass'n***, 446 S.E.2d at 367-68 (citations omitted).

In noting that its holding was consistent with a majority of jurisdictions which have considered this issue, the North Carolina court cited the following decisions: ***Utah Property & Casualty Insurance Guaranty Ass'n v. United Services Automobile Ass'n***, 281 Cal. Rptr. 917 (Cal. Ct. App. 1991); ***Government Employees Insurance Co. v. Burak***, 373 So. 2d 89 (Fla. Dist. Ct. App. 1979); ***Thomas v. American Family Mutual Insurance Co.***, 485 N.W.2d 298 (Iowa 1992); and ***Kentucky Insurance Guaranty Ass'n v. State Farm Mutual Automobile Insurance Co.***, 689 S.W.2d 32 (Ky. Ct. App. 1985). In ***Kentucky Insurance Guaranty Ass'n v. State Farm Mutual Automobile Insurance Co.***, State Farm's policy defined an "uninsured motor vehicle" to include a motor vehicle "with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same . . . ***is or becomes insolvent***." ***Kentucky Ins. Guar. Ass'n***, 689 S.W.2d at 34 (emphasis added). Like the Tennessee statute at issue here, the Kentucky statute provided that an insurer's insolvency protection

shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within one (1) year after such an accident. Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder.

*Id*. (quoting Ky. Rev. Stat. § 304.20-020(3)). In reaching the same conclusion as the North Carolina court, the Court of Appeals of Kentucky stated:

> We conclude, therefore, that the one-year limitation period in [the statute] was intended by the legislature to define a minimum period after an accident during which uninsured motorist coverage protecting against insolvency of a tortfeasor's insurer must be provided, rather than to define a maximum period during which such coverage may be provided. . . .
>
> Here, State Farm issued a policy in which [it] elected not to impose any time limitation whatever on the period during which protection against insolvency is afforded. By doing so, State Farm must be deemed to have voluntarily agreed to provide uninsured motorist coverage protecting against insolvency more favorable than the minimum coverage which is required by [the statute].

*Id*. at 35.

In *Thomas v. American Family Mutual Insurance Co.*, 485 N.W.2d 298 (Iowa 1992), the insurer issued two policies which defined an "uninsured motor vehicle" to include a motor vehicle that was insured by "a bodily injury liability bond or policy at the time of the accident but the company . . . *is or becomes insolvent*." *Thomas*, 485 N.W.2d at 300 (emphasis added). In addition, the Iowa statute similarly provided that an insurer's insolvency protection would be applicable only if "the liability insurer of the tortfeasor is insolvent at the time of such an accident or becomes insolvent within one year after such an accident." *Id*. (quoting Iowa Code § 516A.3 (Supp. 1991)). Although the statute apparently did not expressly permit an insurer to afford more favorable coverage, as do the Tennessee, North Carolina, and Kentucky statutes, the Supreme Court of Iowa nevertheless held that American Family's policies afforded coverage in addition to that required by the statute. The court reasoned:

> [T]his is not a case where the policy provisions contravene the statute, rendering the policy language ineffective. . . . American Family is not narrowing the coverage it is required by law to provide. Rather, as the [trial] court wisely noted, the language of the policies enhances the minimum insolvency time limit imposed by section 516A.3 and extends the period during which victims may collect under their uninsured motorist coverages:
>
>> The only difference between the statutory definition of "uninsured motor vehicle" and the policy definition of "uninsured motor vehicle" is that the

[policies do] not limit the term of insolvency to one year. Rather, the [policies expand] the definition to any period of time [in] which the liability insurer becomes insolvent. This expansion in coverage actually works to extend the protection granted by the legislature. . . .

. . . .

In sum, we find that the legislature intended a mandatory minimum time frame during which a victim is guaranteed recovery from the victim's own uninsured motorist policy if the tortfeasor's insurer becomes insolvent. Insurers are free to extend this protection. If they do, the one-year minimum in section 516A.3 is not incorporated into the policy so as to deny an insured uninsured motorist coverage.

So we conclude the one-year limitation regarding insolvency in section 516A.3 was not incorporated into the two policies here so as to limit uninsured motorist coverage otherwise afforded by the policies. Instead, the policies afforded coverage in addition to that required by section 516A.3.

*Thomas*, 485 N.W.2d at 300-01 (citation omitted).

To bolster its position, the Iowa court quoted the comments of an authority on uninsured motorist insurance:

[W]hen the insurance policy uses coverage language that provides that a vehicle is uninsured if the liability insurer "is or becomes insolvent" without specifying any period of time, the uninsured motorist claim may not be barred even though the period specified in the statute has passed.

When an uninsured motorist insurance policy includes coverage for insolvencies, but does not specify a time limit, the time period prescribed in the statute may not be incorporated into the coverage terms. Courts could decide that the statute only establishes the minimum level of coverage, and that insurance companies are free to provide more favorable or extensive coverage. Several courts have applied this analysis, holding that when uninsured motorist coverage states that insurance is provided in the event of an insolvency and does not place a time limit with respect to the occurrence of an insolvency, the uninsured motorist coverage was more extensive than required by the statute. The courts concluded that in this situation, an insured is not barred from asserting a claim under the uninsured motorist coverage even though the insolvency occurred after the time specified in the statute had passed.

*Thomas*, 485 N.W.2d at 301 (quoting 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 8.17, at 388 (2d ed. 1990)).

In accordance with the foregoing authorities, we hold that, by providing uninsured motorist coverage when the insuring company "is or becomes insolvent," USF&G agreed to furnish coverage beyond the one year mandated in section 56-7-1203. The phrase "is or becomes insolvent" neither specifies a period of time for, nor imposes any time limitation on, the insolvency protection afforded by USF&G's policy. Instead, the phrase serves to expand the definition of an uninsured motor vehicle to include any period of time in which the insuring company becomes insolvent. By including such language, and thereby electing not to impose any time limitation on the period during which protection against insolvency is provided, USF&G effectively agreed to afford coverage under terms and conditions more favorable than those required by section 56-7-1203.

On appeal, USF&G insists that, by operation of law, the time limitation set forth in section 56-7-1203 became part of its policy. It is true that, in Tennessee, "any statute applicable to an insurance policy becomes part of the policy and such statutory provisions override and supersede anything in the policy repugnant to the provisions of the statute." *Hermitage Health & Life Ins. Co. v. Cagle*, 420 S.W.2d 591, 594 (Tenn. App. 1967). Specifically, all provisions of this state's uninsured motorist statutes become provisions of all automobile insurance policies issued for delivery in Tennessee. *Dunn v. Hackett*, 833 S.W.2d 78, 82 (Tenn. App. 1992). Where there is a conflict between a statutory provision and a policy provision, the statutory provision must prevail. *Id*.

We do not perceive any conflict between the insolvency protection afforded by section 56-7-1203 and that afforded by USF&G's policy. The statute limits such protection to one year but permits the insurer to include more favorable terms and conditions in its policy. As previously discussed, by providing Hogins with uninsured motorist coverage when the insuring company "is or becomes insolvent," without placing a time limitation on such insolvency, USF&G has afforded more favorable coverage to Hogins than that required by the statute. Inasmuch as the statute specifically contemplates and permits such a result, no conflict exists between the statute and the policy provisions.

The trial court's judgment is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to USF&G, for which

execution may issue if necessary.

_____

FARMER, J.

_____

CRAWFORD, P.J., W.S. (Concurs)


_____

HIGHERS, J. (Concurs)