NOT FOR PUBLICATION
File Name: 06a0468n.06
Filed: May 16, 2006

NO. 04-6029

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KENTUCKY NATIONAL INSURANCE
COMPANY,

     Plaintiff-Appellant,

v.

CARL JEFFREY LAWRENCE,
BROOKE MCCOY, BART BRODY

     Defendants-Appellees.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

BEFORE:    NORRIS, SUHRHEINRICH, and ROGERS, Circuit Judges.

**SUHRHEINRICH, J.,** Plaintiff-Appellant Kentucky National Insurance Company ("KNIC") brought suit against Defendants-Appellees Carl Jeffrey Lawrence, Brooke McCoy, and Bart Brody seeking a declaration of its duties and obligations under an insurance policy issued to Lawrence. KNIC appeals the order of the district court declaring KNIC's duty to defend and indemnify. For the reasons that follow, we **AFFIRM**.

**I.**

On October 26, 1999, Lawrence began leasing a large, warehouse apartment in downtown Knoxville for use as his primary residence. Under the terms of his lease agreement, Lawrence was required to carry liability insurance. In March 2000, he purchased a homeowner's insurance policy from KNIC.

In the summer of 2000, an acquaintance, Brad Luttrell, approached Lawrence about the

possibility of hosting a party at Lawrence's residence. Luttrell's purpose for the party was to charge guests a cover at the door to hear one or more bands play. Lawrence agreed to host the event.

Someone other than Lawrence posted fliers around town promoting the event. The fliers gave the names of the three bands scheduled to perform, the date, time, and directions to Lawrence's residence. They also read, "ONLY $5 AT THE DOOR."

The party was held on October 14, 2000. Between twenty and forty people attended. Luttrell was responsible for collecting the $5 cover charge. The bands were set up on the second floor. Around 10:00 p.m., the second floor collapsed, injuring several people, including party guests Brooke McCoy and Bart Brody.

McCoy brought a negligence action against Lawrence and others in Tennessee state court. KNIC attended a January 7, 2004 mediation in which the parties attempted to settle all potential claims against Lawrence.

McCoy eventually obtained a default judgment against Lawrence. KNIC then brought this diversity action seeking declaratory judgment. KNIC asked the court to find that it owed no duty to defend or indemnify Lawrence for any claims arising as a result of the party. In support, KNIC argued, inter alia, that the provisions of the insurance policy expressly excluded liability for "rental . . . of . . . premises."

Following a trial on the merits, the district court made the following findings of fact. Lawrence's homeowner's insurance policy excluded KNIC from liability resulting from damage arising out of the "rental" of the premises, but the policy provided no definition for "rental."

Lawrence received no valuable consideration for hosting the party, never rented the premises to anyone, and did not prepare any invitations. Also, none of the bands received any payment, nor

was any profit generated from the party. At the time of the incident, Lawrence's occupations were as a landscaper and cook; he was not a "nightclub" manager by trade, profession, or occupation. The court found Lawrence to be a credible witness.

Finally, the district court found that on January 7, 2004, KNIC attended a mediation involving potential claimants on behalf of Lawrence but did not reserve any rights disclaiming liability or provide reasonable notice that it would not be representing Lawrence until it concluded its investigation of the incident.

Based on these findings, the district court concluded that the rental exclusion did not apply, because "Lawrence never received any consideration for hosting the party." Although Lawrence admitted that Luttrell, at some point during the months leading up to the party, mentioned that Lawrence "might" receive some money as "rent," the court concluded that "this was a contingent arrangement at best and, contrary to the definition of a 'rental.'"

Alternatively, the district court held that KNIC was estopped from denying coverage to Lawrence and had waived any exclusion rights based on KNIC's initial representation of Lawrence at the January 7, 2004 mediation.

This timely appeal followed.[1]

## II.

KNIC raises two issues on appeal. The first is whether the district court erred in concluding that KNIC was estopped from denying coverage and had waived any exclusion rights under the policy. The second is whether the district court erred in concluding that KNIC was not excluded from defending or indemnifying Lawrence under the "rental" provision of the insurance policy.

---

[1] Only KNIC filed a brief on appeal.

This Court reviews a district court's findings of fact for clear error and reviews conclusions of law de novo. *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). Because this is a diversity case involving an insurance policy issued to a Tennessee resident for coverage of property located in Tennessee, Tennessee substantive law governs the analysis. *First Am. Nat'l Bank v. Fid. & Deposit Co.*, 5 F.3d 982, 984 (6th Cir. 1993).

Although it appears the district court erroneously held that KNIC was estopped from denying coverage because the defenses of estoppel or waiver were never pleaded nor added to the pretrial order, *see* Fed. R. Civ. P. 16(e) (the pretrial order "shall control the subsequent course of the action"); *McLean Contr. Co. v. Waterman S.S. Corp.*, 277 F.3d 477, 480 (4th Cir. 2002) ("Failure to identify a legal issue worthy of trial in the pretrial conference or pretrial order waives the party's right to have that issue tried."), we need not resolve that dispute. We agree with the district court's findings that support the conclusion that the arrangement between Lawrence and Luttrell was not a "rental."

In Tennessee, contractual interpretations, including interpretations of insurance policies, are legal conclusions that are reviewed de novo. *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 5-6 (Tenn. Ct. App. 1998); *see also Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 577 (6th Cir. 2006). While a claimant under an insurance policy has the burden of proving the existence and validity of the policy and the details of the claim, the insurer has the burden of proving the applicability of any exclusion. *First Am. Nat'l Bank v. Fid. & Deposit Co.*, 5 F.3d 982, 984-85 (6th Cir. 1993).

The relevant language from the insurance policy provides:

Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to "bodily injury" or "property damage":

-4-

. . .

c. Arising out of the rental or holding for rental of any part of any premises by an "insured." This exclusion does not apply to the rental or holding for rental of an "insured location":

(1) On an occasional basis if used only as a residence;

(2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(3) In part, as an office, school, studio, or private garage[.]

(Emphasis removed.) "Rental" is not defined in the policy.

"In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning." *NSA DBA Benefit Plan, Inc. v. Conn. Gen. Life Ins., Co.*, 968 S.W.2d 791, 795 (Tenn. Ct. App. 1997). We have found no case from Tennessee defining "rental" in a homeowner's insurance policy. In the absence of direct authority on the matter, Tennessee courts often look to dictionaries to determine the ordinary meaning of the terms in an insurance contract. *See, e.g.*, *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 815 (Tenn. 2000) (citing *Black's Law Dictionary*); *Hogins v. Ross*, 988 S.W.2d 685, 687 (Tenn. Ct. App. 1998) (citing *Webster's Third International Dictionary*).

The *American Heritage Dictionary* defines "rental," as "[a]n amount paid or collected as rent," *American Heritage Dictionary of the English Language* (4th ed. 2000), *available at* http://www.bartleby.com/61/38/R0153800.html (last visited April 17, 2006), and defines "rent" as "[p]ayment, usually of an amount fixed by contract, made by a tenant at specified intervals in return for the right to occupy or use the property of another," *id.*, *available at* http://www.bartleby.com/61/35/R0153500.html (last visited April 17, 2006). *Webster's* defines "rental" as "an amount paid or received as rent." *Webster's New World Dictionary* 1137 (3d ed.

1988). It further defines "rent" as "a stated return or payment for the temporary possession or use of a house, land, or other property, made, usually at fixed intervals." *Id. Black's* contains a similar definition.[2] The common thread of these definitions is that "rent" or "rental" implies a pre-existing obligation to pay. Thus, assuming Lawrence had an agreement, in the absence of any pre-existing legal basis for insisting on payment, the transaction would not have been a "rental" as that term is ordinarily understood.

Nor does the transaction here fit into the definition of "rental" that courts have found in other insurance contexts. The Tennessee Supreme Court has said that the a "rental use" exclusion in an automobile insurance policy "seems to denote the custom, practice, or business of renting the car to the public generally, and not to prohibit a private arrangement of the character here involved between an employer and one of its employees."[3] *Associated Indem. Corp. v. McAlexander*, 79 S.W.2d 556, 560 (Tenn. 1935). Every other court that has had the occasion to interpret a rental exclusion in an insurance policy has similarly concluded that "rental" generally means a commercial enterprise. *See Wells v. Allstate Ins. Co.*, 327 F. Supp 622, 631 (D.S.C. 1971); *Christensen v. State Farm Mut. Auto. Ins. Co.*, 470 P.2d 521, 527 (Haw. 1970); *Peterson v. Marlowe*, 264 N.W.2d 133, 136 (Minn. 1977); *Crowell v. Md. Motor Car Ins. Co.*, 85 S.E. 37, 38 (N.C. 1915); *Herwig v. Enerson & Eggen*, 295 N.W.2d 201, 204 (Wis. Ct. App. 1980), *aff'd*, 303 N.W.2d 669 (Wis. 1981) (per curiam).

---

[2]"Rent. Consideration paid for use or occupation of property. In a broader sense, it is the compensation or fee paid, usually periodically, for the use of any rental property, land, buildings, equipment, etc." *Black's Law Dictionary* 1297 (6th ed. 1990) (emphasis removed).

[3]The exact language in the policy was the exclusion of coverage "for rental or livery use or the carrying of passengers for an expressed or implied consideration." *McAlexander*, 79 S.W.2d at 560.

The district court found that Lawrence neither made nor intended to make a profit from the event. This finding was not clearly erroneous. Lawrence testified, "[The rent] wasn't an issue with me, the money was not an issue, and if anyone here actually knew me they [sic] would know money is not an issue. I've never been a person who is concerned about money." There is no indication in the record that Lawrence had ever entered into a similar transaction in the past,[4] and the district court specifically found that he was not in the trade, business, or profession of nightclub management. Therefore, any agreement Lawrence may have entered into would not fit the "commercial" definition of "rental."

Moreover, the purpose of a rental exclusion is to limit an insurer's risk. *Herwig*, 295 N.W.2d at 204. If a homeowner continually rents out his insured property in a commercial nature, the risk to which an insurer is exposed significantly increases beyond the normal use of the premises. However, when the arrangement is for a single, permissive use of the property and the money is incidental to the transaction, the risk to the insurer does not change. *Cf. Christensen*, 470 P.2d at 527 (holding that a rental exclusion did not apply because "it [was] apparent that the money agreement was an incident rather than the essence of the arrangement. Therefore the risk to the insurance company cannot be said to have been increased 'beyond normal operation'"). Here, Lawrence stated that he intended to host the party not for monetary gain, but because "[i]t was fun to me, and I have a big house and it was all enjoyable." In other words, profit and the possibility of future rentals were not the "essence" of the arrangement. Thus, the purpose of the rental exclusion was not implicated here.

---

[4]The district court found Lawrence had hosted this kind of party once before, but the details of that event were not brought out at trial.

KNIC cites only one case in support of its argument that the ordinary meaning of "rental" is an agreement to allow another to use one's property in return for valuable consideration. *See Salmon v. Commercial Union Ins. Co.*, 267 S.E.2d 273 (Ga. Ct. App. 1980). However, even that case is not favorable to KNIC. In *Salmon*, the homeowner boarded another's horse in exchange for a monthly payment of $25. *Id.* at 273. The court concluded that this arrangement was a "rental" under the ordinary meaning of the word, which the court defined as an amount *"paid at fixed intervals . . . for the use of land."* *Id.* at 274. It is clear from the opinion that the periodic nature of the arrangement was determinative. Here, any agreement between Lawrence and Luttrell encompassed only one potential payment in exchange for a single use of the premises, and thus would not have been a "rental" under *Salmon*.

In any event, a "rental" necessarily implies the existence of a contract. As the district court properly concluded, however, the facts do not establish that Lawrence and Luttrell entered into a contract. Tennessee law follows the objective standard of mutual assent to contract. *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005). Here, Lawrence stated that Luttrell had "wanted to pay me to rent the building. I was, well, you know, whatever . . . ." When asked whether any of the cover charge money was going to go to him for rent, Lawrence responded, "That was discussed and stuff like that, as far as they had said that I could have some money. They asked me if I wanted, you know – and I said, well, it's, you know, no big thing to me one way or the other." Also, when asked whether he had been promised any money, Lawrence said, "No. I – well, I guess actually, yeah, I guess in a way I would have been, 'cause on Saturday they said they gave me some money out of the door."

Responses such as "whatever" and "it's . . . no big thing to me" when confronted with an

opportunity to contract simply fail to demonstrate an objective intent to enter into an agreement. Also, Lawrence's statement that "they said they gave me some money out of the door" does not evidence a meeting of the minds as a matter of law. *See Carter v. Richards*, 1990 Tenn. App. LEXIS 899, at *5 (Tenn. Ct. App. Dec. 21, 1990) (unpublished opinion) (noting that courts determining mutual assent must look only to the time of the alleged contracting rather than later events).

Therefore, we conclude that the district court did not err in concluding that arrangement between Lawrence and Luttrell was not a "rental."

## III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.