PEGGY JONES, As Administratrix of The Estate of Cecil Jones, Plaintiff v. N.C. INSURANCE GUARANTY ASSOCIATION, NORTH CAROLINA FARM BUREAU INSURANCE COMPANY, and TRAVELERS INDEMNITY COMPANY, Defendants

No. COA03-158

(Filed 2 March 2004)

**Insurance— uninsured motorist—insolvency—partial payment—stacking—credit**

The trial court did not err by granting summary judgment in favor of plaintiff based on its conclusion that each defendant uninsured motorist (UM) insurer must pay the full $100,000 of their UM policy coverage toward the unfunded portion of a wrongful death settlement between plaintiff and an insolvent insurance company, because: (1) the liability insurance company's insolvency on 3 January 2001 triggered defendants' UM liability under the Motor Vehicle Safety and Financial Responsibility Act (Act) of N.C.G.S. § 20-279.21(b)(3) instead of the date of decedent's death; (2) nothing in the Act suggests that a partial payment by the insolvent insurer would have any impact on the

responsibility of the UM insurers since defendants' liability did not arise until after the partial funding occurred; (3) the amendment to N.C.G.S. § 20-279.21(b)(3) does not require that coverage amounts above $25,000 be controlled by the policy rather than the Act, nor does it make *Bray v. N.C. Farm Bureau Mut. Ins. Co.*, 341 N.C. 678, inapplicable; (4) plaintiff was not required to file suit and prove liability and damages in light of the settlement agreement, and the Act specifically allows recovery from a UM insurer where the liability insurer of the tortfeasor became insolvent within three years after such an accident as in this case; (5) defendant Farm Bureau's liability arises from the terms of the Act which does not require it to be a party to the agreement; (6) plaintiff notified defendant Farm Bureau of her claim against the UM policy within one month of the liability insurer's insolvency; (7) the Act's anti-stacking provision does not apply in this case; (8) defendants are not entitled to any credit the liability insurer paid before becoming insolvent when nothing in the record indicated that the settlement between plaintiff and the liability insurer resulted from the exercise of any limits of recovery of plaintiff against the tortfeasor; and (9) defendants are not entitled to a credit for any workers' compensation payments made to plaintiff since the UM insurers' liability is based on the liability insurer's insolvency and not on the underlying accident itself.

Appeal by defendants from judgment entered 25 November 2002 by Judge Stafford G. Bullock in the Superior Court in Wake County. Heard in the Court of Appeals 30 October 2003.

*Jones, Martin, Parris & Tessener Law Offices, P.L.L.C., by Hoyt G. Tessener, for plaintiff.*

*George L. Simpson, III and Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Mark A. Michael and Sharon E. Dent, for defendant-appellant Travelers Indemnity Company.*

*Willardson, Lipscomb & Miller, L.L.P., by William F. Lipscomb, for defendant-appellant North Carolina Farm Bureau.*

*Nelson, Mullins, Riley & Scarborough, L.L.P., by Joseph W. Eason and Christopher J. Blake, for defendant-appellee North Carolina Insurance Guaranty Association.*

JONES v. N.C. INS. GUAR. ASS'N

[163 N.C. App. 105 (2004)]

HUDSON, Judge.

On 19 March 2002, plaintiff Peggy Jones, Administratrix of the Estate of Cecil Jones ("plaintiff"), filed a complaint seeking to have the court declare the obligations of defendants, the North Carolina Insurance Guaranty Association ("NCIGA"), Farm Bureau Insurance Company ("Farm Bureau"), and Traveler's Indemnity Company ("Travelers" and, collectively with Farm Bureau, the "UM insurers"), to pay a portion of a wrongful death settlement between plaintiff and Credit General Insurance Company ("Credit General"). Credit General was declared insolvent 3 January 2001, at which time, it owed $290,000 to plaintiff under terms of the settlement. Plaintiff, Farm Bureau and Travelers each moved for summary judgment, and following a hearing, the court granted summary judgment in favor of NCIGA and plaintiff, ordering the UM insurers to each pay $100,000 of uninsured motorist coverage toward the unfunded portion of the settlement. The UM insurers appeal. For the reasons discussed below, we affirm the judgment of the trial court that the UM insurers each must pay the full $100,000 of their UM policy coverage.

## Background

Plaintiff's husband Cecil Jones was killed 11 August 1999 while at work for his employer Pettiford Trucking at Fogleman Landfill in Durham. As Mr. Jones stood next to his Pettiford dump truck, he was struck and killed by the tailgate of a passing Orange Hauling dump truck driven by Geryl Terrell ("Mr. Terrell"). Three insurance policies in effect at the time of the accident are at issue here. Credit General, then solvent, insured Orange Hauling under terms of a commercial automobile policy. Farm Bureau insured the owners of Pettiford Trucking under terms of a commercial automobile policy, which provided $100,000 in uninsured motorist ("UM") coverage. Cecil Jones, plaintiff, owned a personal automobile policy issued by Travelers, which also provided $100,000 in UM coverage.

Following Mr. Jones' death, plaintiff threatened to bring a wrongful death action against Orange Hauling and Mr. Terrell, alleging negligence. Plaintiff reached a settlement with Credit General in October 2000, without filing a lawsuit. In the settlement, Credit General agreed to pay plaintiff $270,000 in cash plus an annuity paying $1,500 per month; in exchange, plaintiff agreed to release Orange Hauling and Mr. Terrell from liability. Credit General then partially paid the settlement before being declared insolvent on 3 January 2001.

Plaintiff then sought to have NCIGA pay the $290,000 still due under the terms of the settlement (comprising the entire $270,000 lump cash payment plus $20,000 by which the annuity was underfunded), and NCIGA informed her that she must first collect the $100,000 limits from each of the UM insurers. Of the unfunded amount, NCIGA paid plaintiff $90,000, the portion of the settlement remaining after deducting the expected $200,000 UM coverage. The UM insurers denied coverage to plaintiff, maintaining that NCIGA was liable for the entire $290,000 amount. Plaintiff filed this action to have the court declare the liability of NCIGA and the UM insurers.

### Analysis

"[T]he standard of review on appeal from summary judgment is whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). The evidence presented must be viewed in the light most favorable to the non-movant. *Id.* Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. § 1A-1, Rule 56(c) (1999). Thus, the issue before us is whether a genuine issue of material fact existed as to plaintiff's entitlement to UM coverage under the Travelers and Farm Bureau policies.

Throughout their assignments of error, the UM insurers focus on the date of Mr. Jones' death as the date triggering possible coverage under their UM policies. We do not believe his date of death is the critical point, however, and thus the UM insurers' arguments based on this date are misplaced. Instead, we conclude that Credit General's insolvency 3 January 2001 triggered Travelers' and Farm Bureau's UM liability. The pertinent language of the Motor Vehicle Safety and Financial Responsibility Act ("the Act") states:

> Provided under this section the term "uninsured motor vehicle" shall include, but not be limited to, an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability within the limits specified therein because of insolvency.

> An insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's

uninsured motorist coverage is in effect where the liability insurer of the tort-feasor becomes insolvent within three years after such an accident.

G.S. § 20-279.21 (b)(3) (1999). Credit General was "unable to make payment with respect to the legal liability within the limits" of its policy, and its insolvency occurred within three years of the accident. Thus, under the Act, Credit General's insolvency triggers the liability of the UM insurers for the amount of payment remaining under the settlement at that time.

## I.

Both Travelers and Farm Bureau first argue that UM coverage does not apply here because at the time of Cecil Jones' death, Credit General was solvent and was able to pay $170,000 to plaintiff before it became insolvent. The UM insurers contend that the Act does not address the facts presented here, and that a claim in which a substantial payment has been made by an insurer prior to insolvency should not be considered "uninsured". We disagree.

As discussed above, the Act does address the factual situation presented here, and nothing in the Act suggests that a partial payment by the insolvent insurer would have any impact on the responsibility of the UM insurers, since their liability did not arise until after Credit General's partial funding occurred. The UM insurers were not liable for any amount of the settlement paid by Credit General before its insolvency. The UM insurers became liable only when Credit General became insolvent (unable to pay further) and Orange Hauling and Mr. Terrell became uninsured. Thus, any payments made before that time have no bearing on whether they are liable here.

## II.

Farm Bureau next argues that Cecil Jones was not an insured under its UM coverage because Mr. Jones was not "occupying" the Pettiford dump truck when he was killed, as required by terms of its policy. Farm Bureau acknowledges that the Act and case law define "insured" more broadly, so as to include Mr. Jones, but argues that the policy controls. *See Falls v. N.C. Farm Bureau Mut. Ins. Co.*, 114 N.C. App. 203, 441 S.E.2d 583, *disc. review denied*, 337 N.C. 691, 449 S.E.2d 521 (1994); *see also* G.S. § 20-279.21 (b)(3) (1999). In addition, our Supreme Court, in *Bray v. N.C. Farm Bureau Mut. Ins. Co.*, held that a policy provision that contradicts the mandates of the Act is not enforceable. 341 N.C. 678, 684, 462 S.E.2d 650, 653 (1995). Farm

Bureau, argues however, that *Bray* is inapplicable here because of a subsequent amendment of G.S. § 20-279.21 (b)(3), which removed the requirement that UM coverage equal a policy's liability coverage, in the absence of a rejection, and which set the minimum liability coverage at $25,000.

In our view, the amendment to G.S. § 20-279.21 (b)(3) simply changed the presumptive limits of UM coverage included in a policy, absent a different specification. The amendment does not, however, require that coverage amounts above $25,000 be controlled by the policy rather than the Act, or make *Bray* inapplicable to the case at hand. Thus, this argument lacks merit.

## III.

Next, both Farm Bureau and Travelers argue that plaintiff is not entitled to UM coverage because she has not shown she is legally entitled to recover damages from either of their insureds. The UM insurers contend that plaintiff has proved neither her legal right to recover damages, nor the amount of damages she suffered. Farm Bureau argues that because plaintiff knew of Credit General's insolvency by 1 February 2001, and could have filed a wrongful death claim against Geryl Terrell and Orange Hauling in the six months remaining under statute of limitations, but failed to do so, her claim is now barred. Because, as we have previously noted, Credit General's insolvency was the event triggering the liability of the UM insurers, this argument is misplaced.

On the date of Credit General's insolvency, Farm Bureau and Travelers became liable to plaintiff for the unfunded amount of its settlement, not directly for damages arising from the accident that caused Mr. Jones' death. The amount of the settlement represented, in essence, the "damages" agreed upon by the parties and a release of liability. We do not believe plaintiff was required to file suit and prove liability and damages, in light of this agreement. Prior to its insolvency, Credit General clearly had the "legal liability" to make payment accordingly. G.S. § 20-279.21 (b)(3). Further, even if plaintiff had not released Orange Hauling and Mr. Terrell from liability, the statute of limitations for the wrongful death claim was irrelevant once the settlement between plaintiff and Credit General was reached. The Act specifically allows recovery from a UM insurer "where the liability insurer of the tort-feasor becomes insolvent within three years after such an accident," without reference to any other limitation period. G.S. § 20-279.21 (b)(3).

Here, plaintiff was legally entitled to recover from Credit General under the terms of the settlement, and Credit General did become insolvent within three years of the underlying accident. Thus, the UM insurers became liable to plaintiff for payments Credit General was unable to make.

### IV.

The Farm Bureau next argues that plaintiff is not entitled to UM coverage because Farm Bureau was not a party to the settlement agreement. We disagree. By virtue of its UM policy and the terms of the Act, Farm Bureau succeeded to Credit General's liability to plaintiff upon Credit General's insolvency. Farm Bureau's liability here arises from terms of the Act, which does not require that it be party to the agreement. Thus, plaintiff is entitled to recovery under its UM policy.

### V.

Farm Bureau also argues that plaintiff is barred from recovery under its UM policy because she breached the policy terms by failing to notify it promptly of the accident which took her husband's life. Again, it was Credit General's insolvency, not the date of the accident that gave rise to the UM liability. Because plaintiff notified Farm Bureau of her claim against the UM policy within one month Credit General's insolvency, this assignment of error is without merit.

### VI.

Farm Bureau and Travelers next assert that plaintiff can recover a maximum of $100,000 from both UM insurers combined. The UM insurers contend that both the Act and their policies prohibit inter-policy combining or "stacking." We disagree and conclude that the type of stacking plaintiff seeks here is not prohibited by the statute.

The Act addresses directly the issue of stacking coverages from multiple UM policies:

> Where the coverage is provided *on more than one vehicle insured on the same policy or where the owner or the named insured has more than one policy with coverage* under this subdivision, there shall not be permitted any combination of coverage within a policy or where more than one policy may apply to determine the total amount of coverage available.

G.S. § 20-279.21(b)(3) (emphasis added). The plain language of the statute prohibits intra- and inter-policy stacking of UM coverage only for the same owner or named insured. Here, Mr. Jones was neither the owner nor the named insured of both policies; he was the named insured only under the Travelers policy. Under the Farm Bureau policy, he was insured as an employee of the named insured. Thus, the Act's anti-stacking provision does not apply here, and we reject this argument.

## VII.

Next, the UM insurers argue that, even if plaintiff is entitled to coverage under their UM policies, Farm Bureau and Travelers are entitled to a credit against their combined liability for the $170,000 amount Credit General paid before becoming insolvent. Because we disagree with their interpretation of the statute, we conclude otherwise.

The UM insurers rely on the following statutory language in support of their argument:

> In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of coverage, the insurer making payment shall, to the extent thereof, be entitled to the proceeds of any settlement for judgment resulting from the exercise of any limits of recovery of that person against any person or organization legally responsible for the bodily injury for which the payment is made, including the proceeds recoverable from the assets of the insolvent insurer.

G.S. § 20-279.21(b)(3). The UM carriers argue that "In plain English, the statute says that a UM insurer called upon for payment to its insured may recover whatever sums are paid by the at-fault party or its insurer." While the UM insurers' argument is in plain English, the language of the statute is anything but. To the extent we are able to decipher this provision, we believe it means that a UM insurer who must pay is entitled to a credit in the event that the plaintiff has received proceeds "resulting from the exercise of any limits of recovery." Nothing in this record indicates that the settlement between plaintiff and Credit General resulted from "the exercise of any limits of recovery" of the plaintiff against the tortfeasor. Thus, we hold that this credit does not apply here.

Finally, the last phrase of this statute section specifies that if this provision applies, the UM carrier may have a credit for any "proceeds

*recoverable* from the assets of *the insolvent insurer.*" Since we have concluded that the provision does not apply at all, we need not address the significance of this last phrase.

## VIII.

In its final assignment of error, Farm Bureau contends that it is entitled to a credit for any workers' compensation payments made to plaintiff, pursuant to G.S. § 20-279.21(e), which provides the following, in pertinent part:

> Uninsured or underinsured motorist coverage that is provided as part of a motor vehicle liability policy shall insure that portion of a loss uncompensated by any workers' compensation law and the amount of an employer's lien determined pursuant to G.S. 97-10.2(h) or (j).

G.S. § 20-279.21(e). Again, based on the insolvency of Credit General as the trigger for Farm Bureau's UM liability, we disagree.

The cases cited by Farm Bureau each concern UM coverage triggered by car accidents involving motorists who were uninsured or under-insured at the time of the accident, not insurers who settled claims and then subsequently became insolvent. In the former cases, the UM or UIM insurers were liable based on the accidents themselves, and thus, workers' compensation payments made as result of the accident were properly credited against UM or UIM coverage. Here, the UM insurers' liability is based on Credit General's insolvency, and not on the underlying accident itself. Thus, the "loss" at issue here is that part of the settlement which remained unpaid at the date of insolvency, not the actual injury. Workers' compensation benefits would not be available to pay any part of the settlement upon Credit General's insolvency, and thus, the entire "loss" was uncompensated by workers' compensation. Therefore, Farm Bureau may not take credit for any workers' compensation payment previously received as a result of the accident against its UM liability. This final assignment of error is overruled.

## Conclusion

For the reasons discussed above, we affirm the judgment of the trial court.

Affirmed.

Judges McGEE and CALABRIA concur.