The **NETHERLANDS INSURANCE COMPANY,** Plaintiff,

v.

**Billy Wayne COCKMAN, Amy Melissa Thompson, Carrie Thompson, Midland Delivery Service, Inc., and Travelers Indemnity Company,** Defendants.

No. 1:03CV916.

United States District Court,
M.D. North Carolina.

Oct. 21, 2004.

Jay Patrick Tobin, Young Moore and Henderson P.A., Raleigh, NC, for Plaintiff and Counter–Defendant.

Robert G. McIver, Hunter Higgins Miles Elam & Benjamin, PLLC, Greensboro, NC, for Defendants.

Joel G. Bowden, Law Office of Joel G. Bowden, Paul D. Coates, Pinto Coates Kyre & Brown, PLLC, Greensboro, NC, for Defendants and Counter–Defendant.

## JUDGMENT

OSTEEN, District Judge.

On September 21, 2004, the United States Magistrate Judge's Recommendation was filed and notice was served on the parties pursuant to 28 U.S.C. § 636(b). No objections were received by the court within the time prescribed by the statute.

The court hereby adopts the Magistrate Judge's Recommendation.

**IT IS HEREBY ORDERED AND ADJUDGED** that this action be **DISMISSED** without prejudice to the parties to litigate in the pending state court action the insurance coverage issues. The Plaintiff's motion to dispense with mediation (docket no. 30–1) is **MOOT**.

## RECOMMENDATION BY UNITED STATES MAGISTRATE JUDGE

DIXON, United States Magistrate Judge.

In this case an insurance company seeks a declaratory judgment regarding the company's obligation to provide UM coverage to its insured in a pending personal injury lawsuit filed in state court by the insured against an uninsured motorist. Pending before this court are motions for summary judgment filed by Plaintiff Netherlands Insurance Company [docket no. 18–1], which is the state court plaintiff's UM carrier, and Defendant Travelers Indemnity Company [docket no. 27–1], which is the alleged tortfeasor's insurance liability company.[1] Also pending is a motion to dispense with mediation filed by Plaintiff Netherlands Insurance Company [docket no. 30–1]. The parties have filed respon-

---

1. Netherlands Insurance is now operating as the Montgomery Insurance Company.

sive pleadings and this matter is ripe for disposition. Since there has been no consent, I must deal with the motions by way of a recommendation. For the reasons stated herein, I recommend that the court decline to exercise its jurisdiction under the Declaratory Judgments Act, 28 U.S.C. § 2201(a), and dismiss this action without prejudice to the parties to litigate in state court the coverage issues raised here.

### Statement of the Facts

On October 27, 1999, Defendant Cockman was involved in an automobile accident with Defendant Amy Thompson. At the time of the accident, Cockman was driving a vehicle owned by his employer, Defendant Midland Service, Inc. ("Midland"), and Defendant Amy Thompson was driving a vehicle owned by her mother, Defendant Carrie Thompson. Plaintiff Netherlands Insurance Company ("Netherlands Insurance") was the underinsured motorist/uninsured motorist ("UIM/UM") carrier for Midland, and Defendant Travelers Indemnity Company ("Travelers") was the liability insurance carrier for certain cars owned by Defendant Carrie Thompson. Wright Aff. ¶ 4. On November 6, 2001, Cockman filed a personal injury lawsuit against Defendants Amy Thompson and Carrie Thompson in Guilford County Superior Court. Defendants Amy Thompson and Carrie Thompson subsequently hired attorney Robert McIver to defend them in the action. On or about June 26, 2002, Defendant Travelers received for the first time a copy of the summons and complaint against the Thompsons. Grant Aff. ¶ 6. Attorney McIver thereafter continued to represent the Thompsons in the lawsuit, with Travelers providing the defense costs after McIver agreed to work under Travelers' legal guidelines. See Grant Aff. ¶ 7. On October 14, 2002, Cockman's counsel notified Netherlands Insurance of a potential UIM claim. Wright Aff. ¶ 5.

On January 28, 2003, after defending the Thompsons in the state court lawsuit for more than seven months, Travelers determined that the car involved in the accident was not insured under Travelers' policy with Carrie Thompson. See Grant Aff. ¶¶ 8–9. On around January 29, 2003, Travelers notified the Thompsons that it was denying coverage and that it would no longer defend them in the lawsuit. Wright Aff. ¶ 6 & Ex. B. On February 10, 2003, in response to receiving a copy of Travelers' letter regarding noncoverage, Cockman's counsel notified Netherlands Insurance of a potential UM claim. Wright Aff. ¶ 7. On March 5, 2003, Netherlands Insurance, proceeding as an unnamed defendant in the lawsuit against the Thompsons, filed a motion to dismiss and/or motion for summary judgment, alleging insufficient process, insufficient service of process, lack of personal jurisdiction, and statute of limitations as to Cockman's UIM/UM claims.[2] On March 18, 2003, Defendant Cockman's counsel served on Netherlands Insurance, through the North Carolina Commissioner of Insurance, copies of the complaint and summons in the personal injury lawsuit. Wright Aff. ¶ 8 & Ex. D.

---

2. Under the UM statute, after an insured has served a UM carrier with a copy of a summons, complaint, or other process, the carrier becomes a party to an action between the insured and the uninsured tortfeasor, and the UM carrier is permitted to defend the suit in its own name or in the name of the uninsured tortfeasor. N.C. GEN. STAT. § 20–279.21(b)(3)(a) (2001). Thus, the UM carrier is automatically included in the underlying tort action as an unnamed defendant. See Polk v. Andrews, 161 N.C.App. 177, 179, 587 S.E.2d 510, 511 (2003) ("In requiring the UM carrier to be included in the underlying tort action, the legislature intended to subject the insured's action against the carrier to the statute of limitations for the tort claim.").

On September 26, 2003, while its motion for summary judgment on the UM coverage issue was pending in the state court lawsuit, Plaintiff Netherlands Insurance filed a declaratory judgment action in this court against Defendants Cockman, Amy Thompson, Carrie Thompson, Midland, and Travelers. Netherlands Insurance seeks an order from this court stating that the insurance policy issued by Netherlands Insurance to Midland provides no UIM or UM coverage for Cockman's claims in the state court personal injury lawsuit against the Thompsons. On April 8, 2004, the state court held a hearing on Netherland Insurance's pending state court motion for summary judgment on this same issue. The state court declined to rule on Netherland Insurance's motion, and, instead, entered an order on April 22, 2004, staying the proceedings pending resolution of this action. *See* Wright Aff. ¶ 9 & Ex. E.

**Standard of Review**

■ Before reaching the substantive issues on the parties' respective motions for summary judgment, I first discuss whether this court should exercise its jurisdiction in this matter. Netherlands Insurance brought this action pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201(a), which provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[3] The exercise of jurisdiction under the Act is not compulsory. *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Thus, even when a district court clearly has jurisdiction under the Act, it may in its discretion decline to exercise that jurisdiction if it determines that declaratory relief is not appropriate.

■ This circuit's court of appeals first made clear in *Aetna Casualty & Surety Co. v. Quarles* that 28 U.S.C. § 2201 gives district courts the discretionary authority to grant declaratory relief where doing so "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." 92 F.2d 321, 325 (4th Cir.1937); *see also Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.,* 139 F.3d 419, 422 (4th Cir.1998). Since then, the court of appeals has stated that a district court's discretion must be guided not only by the criteria outlined in *Quarles,* but also by considerations of federalism, efficiency, and comity. *Mitcheson v. Harris,* 955 F.2d 235, 237–40 (1992). These additional concerns require a court to consider: (1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (2) whether the issues raised in the federal action can be more efficiently resolved in the court in which the state action is pending; (3) whether permitting the action to go forward would result in unnecessary "entanglement" between the federal and state courts; and (4) whether the federal action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achieve a federal hearing in a case otherwise not removable." *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 377 (4th Cir.1994) (citations and internal quotations omitted).

---

3. Here, the constitutional "case or controversy" requirement is met even though Cockman has not yet obtained a judgment against the alleged tortfeasors in the underlying personal injury lawsuit in state court. *See White v.* *National Union Fire Ins. Co.,* 913 F.2d 165, 167–68 (4th Cir.1990). Furthermore, this court has jurisdiction because complete diversity exists among the parties and the amount-in-controversy requirement has been met.

Furthermore, in 1995, in *Wilton v. Seven Falls Co.*, the United States Supreme Court resolved two circuit conflicts concerning a district court's decision to decline jurisdiction in a declaratory judgment action. 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). First, the *Wilton* Court held that the applicable standard for an appellate court's review of a district court's decision against exercising jurisdiction in a declaratory judgment action was not de novo, but abuse of discretion.[4] *Id.* at 289–90, 115 S.Ct. 2137. The second split among the circuits involved the breadth of a district court's discretion in determining whether to exercise its jurisdiction in declaratory judgment actions. Several circuits, drawing on the language of the abstention doctrine developed in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), had held that a district court may decline jurisdiction in a declaratory judgment action under only "exceptional circumstances." *See Wilton*, 515 U.S. at 281–82, 115 S.Ct. 2137 (collecting cases). Other circuits, including the Fourth Circuit, had held that a district court had more discretion in determining whether to exercise jurisdiction. The *Wilton* Court firmly rejected the "exceptional circumstances" standard of *Colorado River* and *Moses H. Cone* in the context of declaratory judgment actions, observing that neither *Colorado River* nor *Moses H. Cone* had involved an action brought under the Declaratory Judgments Act. *Id.* The *Wilton* Court stated that "[d]istinct features of the Declaratory Judgment[s] Act ... justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional cir-

cumstances' test of *Colorado River* and *Moses H. Cone.*" *Id.* The Supreme Court held, instead, that the rules of *Brillhart v. Excess Insurance Co.* govern a district court's decision to stay or dismiss a declaratory judgment action while parallel state court proceedings are pending. *Wilton*, 515 U.S. at 286, 115 S.Ct. 2137.

In *Brillhart*, an insurer, anticipating a coercive suit, sought a declaration in federal court of nonliability on an insurance policy. The *Brillhart* Court upheld the district court's refusal to exercise jurisdiction over the declaratory judgment action. In upholding the refusal to exercise jurisdiction, the *Brillhart* Court explained that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173. The *Brillhart* Court further cautioned that when a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy "can better be settled in the proceeding pending in the state court." *Id.* The *Brillhart* Court noted that this consideration should be guided by a number of factors, including the nature and scope of the state proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding ...." *Id.* In discussing *Brillhart*, the *Wilton* Court observed:

> *Brillhart* indicated that, at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference," if it permitted the federal declaratory action to proceed.

4. This holding overruled the Fourth Circuit's de novo review standard.

*Wilton,* 515 U.S. at 283, 115 S.Ct. 2137 (citation omitted). Thus, in relying on *Brillhart,* the *Wilton* Court underscored the broad discretionary nature of the jurisdiction conferred under the Act:

By the Declaratory Judgment[s] Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the non-obligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.

*Id.* at 288, 115 S.Ct. 2137.

■ Since *Wilton,* this circuit's court of appeals has stated that "[t]o whatever extent our previous decisions have implied further constraints on district court discretion, those decisions must give way to the clear teachings of *Wilton.*" *Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 257–58 (4th Cir.1996) (citation omitted). *See also Beach Cove Assocs. v. United States Fire Ins. Co.,* 903 F.Supp. 959, 962 (D.S.C. 1995) (stating that "the Supreme Court's holding in [*Wilton*] ... indicates that a district court's discretion under the Declaratory Judgment[s] Act is now wider than it was under pre-*Wilton* Fourth Circuit precedent"). Based on the principles enunciated by the Supreme Court in *Wilton* and the multi-factor balancing test developed by the Fourth Circuit, this court must consider whether to exercise its jurisdiction over this declaratory judgment action.

**1. North Carolina's interest in having the issues raised here decided in the state courts.**

I first consider the North Carolina state courts' interest in having the UM coverage issue raised here decided in the state courts. In addressing this factor, this circuit's court of appeals has acknowledged that a state court will have a particularly strong interest in resolving an issue of state law that is particularly "close," "difficult," or "problematic." *See, e.g., Nautilus Ins. Co.,* 15 F.3d at 378; *Continental Cas. Co. v. Fuscardo,* 35 F.3d 963, 967 (4th Cir.1994). Thus, finding that the state law at issue is not entirely settled is a factor weighing against the federal court's exercise of jurisdiction.

■ Here, it is undisputed that Travelers has denied insurance coverage for the car involved in the October 27, 1999, accident. Thus, Defendant Cockman has no UIM claim against Netherlands Insurance. Indeed, the only issue in this case is whether Defendant Cockman has a UM claim against Netherlands Insurance. The answer to this question depends entirely upon North Carolina law, particularly North Carolina's statutory provisions regarding UM coverage, contained in the North Carolina Motor Vehicle Safety and Financial Responsibility Act, commonly referred to as the Financial Responsibility Act.[5] Section 20–279.21 of the Act applies to both UIM and UM coverage.[6] The UM

---

5. A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties agree that North Carolina law, particularly the provisions of the Financial Responsibility Act, governs this dispute. In 1953, the North Carolina General Assembly enacted the Act to protect innocent victims injured by financially irresponsible

motorists. The original Act included UM coverage to protect persons injured by a tortfeasor who had no liability insurance. The General Assembly later added UIM coverage to the Act to protect against tortfeasors with inadequate insurance.

6. The UIM provisions are generally codified at section 20–279.21(b)(4), which defines an "underinsured motor vehicle" as:

provisions are generally codified at section 20–279.21(b)(3), which defines an "uninsured motor vehicle" as:

> a motor vehicle as to which there is no bodily injury liability insurance and property damage liability insurance in at least the amounts specified in subsection (c) of G.S. 20–279.5, or there is that insurance but the insurance company writing the insurance denies coverage thereunder . . . .

Section 20–279.21(b)(3) further states that in order to be bound by a judgment taken by the insured against an uninsured motorist, an insurer must be "served with copy of summons, complaint or other process in the action against the uninsured motorist by registered or certified mail, return receipt requested, or in any manner provided by law . . . ." In interpreting this provision, the North Carolina courts have stated that a UM carrier may be served with the summons and complaint pursuant to the formal service of process methods set forth in N.C. GEN. STAT. § 1A–1, Rule 4(j)(6) of the North Carolina Rules of Civil Procedure, or pursuant to N.C. GEN. STAT. § 58–16.30, which provides for service of process on insurance companies through the North Carolina Commissioner of Insurance. *Thomas v. Washington*, 136 N.C.App. 750, 755, 525 S.E.2d 839, 843 (2000). The North Carolina courts have stringently upheld these service requirements and have thus rejected "actual notice" arguments in the context of UM claims. *See id.* ("Our appellate courts have required strict compliance with the statutes which provide for service of pro-

cess on insurance companies in similar situations."); *Reese v. Barbee*, 129 N.C.App. 823, 826, 501 S.E.2d 698, 700 (1998) (rejecting the plaintiff's argument that actual notice of the pending lawsuit was sufficient to render the UM carrier bound by the final judgment in the action against the uninsured motorist); *see also* George L. Simpson, III, *North Carolina Uninsured and Underinsured Motorist Insurance: A Handbook* § 2:1, at 102 (2003) ("The Court of Appeals has held that nothing short of formal service will suffice.").

Additionally, although the express language of section 20–279.21(b)(3) does not require the UM carrier to be served with a copy of the summons and complaint within a specified period of time, the North Carolina courts have interpreted section 20–279.21(b)(3) to mean that a UM claim is subject to the same statute of limitations that applies to the insured's tort action against the uninsured motorist.[7] *See Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 575–77, 573 S.E.2d 118, 122 (2002); *Polk v. Andrews*, 161 N.C.App. 177, 179, 587 S.E.2d 510, 511 (2003). Thus, if the underlying lawsuit is one for personal injury, then North Carolina's three-year statute of limitations for personal injury lawsuits (as set forth in N.C. GEN. STAT. § 1–52(16)) applies to the UM claim, whereas if the underlying lawsuit is one for wrongful death, then the two-year statute of limitations for wrongful death actions (as set forth in N.C. GEN. STAT. § 1–53(4)) applies to the UM claim. Finally, at least two North Carolina cases hold that the triggering event for the applicable statute of limi-

---

a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

**7.** There is no such statute of limitations requirement for UIM claims for the reasons discussed in *Polk*, 161 N.C.App. at 179, 587 S.E.2d at 511–12, and *Liberty Mutual Insurance Co. v. Pennington*, 356 N.C. 571, 577, 573 S.E.2d 118, 122 (2002).

tations for UM claims is the date of the accident leading to the underlying tort action between the Insured and the alleged tortfeasor. For instance, in *Fulton v. Mickle*, the accident leading to the underlying personal injury lawsuit occurred on April 24, 1994. 134 N.C.App. 620, 625, 518 S.E.2d 518, 522 (1999). The plaintiff brought a personal injury lawsuit against the tortfeasor on August 14, 1996. The facts of that case indicate that sometime between April 24, 1994, and August 16, 1996, the plaintiff learned that the tortfeasor was uninsured. The plaintiff did not render proper service on the UM carrier, however, until November 23, 1997, more than three years after the April 24, 1994, accident. The UM carrier denied UM coverage, arguing that the plaintiff's claim was barred by the three-year statute of limitations. The *Fulton* court agreed, assuming *sub silentio* that the three-year statute of limitations had been triggered by the date of the accident leading to the personal injury lawsuit. *Id.* at 622, 518 S.E.2d at 520.

One year after *Fulton*, the court of appeals in *Thomas v. Washington* upheld the date of the accident as the triggering event for the three-year statute of limitations for the plaintiff's UM claim. 136 N.C.App. at 754, 525 S.E.2d at 842. In *Thomas*, the plaintiff was injured when her vehicle was struck by an uninsured vehicle on March 31, 1995. At the time of the accident, North Carolina Farm Bureau Mutual Insurance Company ("Farm Bureau") was the plaintiff's UM carrier. On March 2, 1998, the plaintiff brought a personal injury lawsuit against the driver and owner of the uninsured vehicle. The plaintiff did not, however, properly serve Farm Bureau with the UM claim until sometime after March 31, 1998. The trial court granted

summary judgment for Farm Bureau, finding that the plaintiff had not brought her UM claim until after expiration of the three-year statute of limitations.

On appeal, the plaintiff argued that since her UM claim arose from a contract of insurance with her UM carrier Farm Bureau, the three-year tort statute of limitations should not apply to her UM claim. The plaintiff argued that the three-year contract statute of limitations applied instead, and that the triggering event for the contract limitations period was either (1) when Farm Bureau denied UM coverage or otherwise breached the contract or (2) when the plaintiff knew or, by the exercise of reasonable diligence, should have known that the tortfeasor was uninsured. The *Thomas* court specifically rejected this argument, stating that "this Court [in *Fulton*] has recently made clear that the three-year tort statute of limitations, which begins running on the date of an accident, also applies to the uninsured motorist carrier." *Id.; accord Polk,* 161 N.C.App. at 179–80, 587 S.E.2d at 512 (citing *Thomas* for the proposition that the triggering event for the applicable statute of limitations for UM coverage is the date of the accident); *see also* George L. Simpson, III, *North Carolina Uninsured and Underinsured Motorist Insurance: A Handbook* § 2:1, at 102 (2003) ("The Court of Appeals has . . . held that the three-year statute of limitations governing the tort action applies to the insured's claim against the UM insurer and that a failure to serve the UM insurer within three years of the accident will bar the UM claim altogether.") (citing *Fulton* and *Thomas* ).

Here, Netherlands Insurance relies on *Thomas* and *Fulton* as well as North Carolina's stringent notice requirements for UM claims in arguing that Cockman is clearly barred by the three-year statute of limitations from bringing a UM claim.[8]

---

8. I note that I have raised the issue of whether this court should exercise jurisdiction sua sponte. Neither party has argued that this

court should decline to exercise jurisdiction, and the parties' respective arguments regard-

Cockman argues, on the other hand, that *Fulton* and *Thomas* are distinguishable from this case and, therefore, the triggering event for the statute of limitations is not the date of the accident. Cockman also argues that Netherlands Insurance had actual notice of a potential UM claim, and Cockman is therefore not barred by the statute of limitations. Finally, both Travelers and Cockman argue alternatively that, for equitable reasons, the statute of limitations should be tolled or Defendant Travelers should be estopped from denying coverage to the Thompsons in the underlying state court action.

First, I agree with Netherlands Insurance that under well-settled North Carolina law actual notice of a potential UM claim will not overcome a statute of limitations bar.[9] I further find, however, that, given the particular facts of this case, it is not clear under North Carolina law whether the date of the accident is the triggering event for the statute of limitations. This case presents a novel scenario that neither *Fulton* nor *Thomas* addressed and that the North Carolina courts do not have appeared to have faced in the context of UM claims. In both *Fulton* and *Thomas,* the insured in those cases discovered the noncoverage before the UM three-year statute of limitations ran. Thus, the insured clearly had the opportunity to file a UM claim within the three-year period after the accident but did not exercise that opportunity. In this case, however, the insured did not even obtain the opportunity to file a UM claim until the three-year period had already passed. In other words, the insured in this case failed to file a UM claim within the statute of limita-

tions not through his own inaction, but because the tortfeasor's insurer did not make its decision regarding noncoverage until after the statute of limitations had run.

In addition, the reasoning of another North Carolina court of appeals case suggests that, given the particular facts presented in this case, a North Carolina court might not find that Cockman is barred under *Fulton* and *Thomas.* In *North Carolina Insurance Guaranty Ass'n v. State Farm Mutual Insurance Co.,* Lisa Cooke was injured on March 25, 1987, when the vehicle driven by her husband Raymond Cooke collided with an automobile driven by Curtis Vance. 115 N.C.App. 666, 446 S.E.2d 364 (1994). State Farm Mutual Automobile Insurance Company ("State Farm") was the Cookes' UM carrier. Interstate Casualty Insurance Company ("Interstate") was Vance's automobile liability insurer. On March 8, 1990, the Cookes brought a personal injury lawsuit against Vance. On April 9, 1990, Interstate was declared insolvent by a North Carolina state court, and the North Carolina Insurance Guaranty Association ("NCIGA") thereafter defended Vance in the action filed by the Cookes.[10] On May 31, 1990, the Cookes amended their complaint to include a UM claim against State Farm. State Farm denied UM coverage. On January 24, 1992, the NCIGA and State Farm agreed to settle the Cookes' suit against Vance and State Farm by respective payments of $6,000 to the Cookes. Both the NCIGA and State Farm reserved the right to seek contribu-

---

ing North Carolina law are directed at their substantive arguments on the motions for summary judgment.

**9.** Indeed, Netherlands Insurance argues that Cockman has still not adequately served Netherlands Insurance with a UM claim be-

cause the February and March 2003 attempts at service did not comply with the UM statute.

**10.** The NCIGA performed this duty as required under the Insurance Guaranty Association Act, *see* N.C. GEN. STAT. § 58–48–1 et seq.

tion from each other for the sum each had advanced to the Cookes in settlement.

On February 28, 1992, the NCIGA filed a declaratory judgment action attempting to recover the amount paid to the Cookes. The trial court granted NCIGA's motion for judgment on the pleadings. State Farm appealed and argued, among other things, that the Cookes could not recover against State Farm as their UM carrier because the claim was barred by a three-year statute of limitations that was triggered by the date of the accident leading to the personal injury lawsuit.[11] The court of appeals agreed that a three-year statute of limitations applied, but stated that:

... the dispositive question is when the statute of limitations began to run. Defendant insists that date is 25 March 1987, when the Cookes were injured. We disagree.

A statute of limitations begins to run when the cause of action accrues. A cause of action accrues when the injured party is at liberty to sue.

.     .     .     .     .

... [I]n the case sub judice, the Cookes were not "at liberty" to assert a claim against defendant State Farm for uninsured motorist coverage as a consequence of "insolvency of the tortfeasor's insurer" until 9 April 1990, the date Interstate was declared insolvent. Therefore, the Cookes' cause of action against defendant accrued 9 April 1990, and on that date the statute of limitations ... began to run. On 31 May 1990, well within the three-year limitation period, the Cookes amended their complaint to include an uninsured motorist coverage claim against defendant. Accordingly, we hold the Cookes' action against defendant was timely filed and

that plaintiff is not barred by the statute of limitations ... from recovering the amount paid the Cookes in settlement of their claim against defendant.

*Id.* at 672–73, 446 S.E.2d 364, (citations omitted). Thus, the court concluded that the triggering event for the three-year statute of limitations for bringing the UM claim was not the date of the accident, but rather, it was the date that the tortfeasor's insurer was declared insolvent.

Admittedly, *North Carolina Insurance Guaranty* involved a UM claim based on a declaration of insolvency rather than denial of coverage. Thus, *North Carolina Insurance Guaranty* is to some degree distinguishable from the facts in this case. Much of the underlying reasoning in that case with regard to the statute of limitations, however, simply cannot be squared with a conclusion in this case that Cockman's right to file a UM claim accrued on the date of the underlying accident. As the *North Carolina Insurance Guaranty* court explained, a statute of limitations does not begin to run until a cause of action accrues, and a cause of action does not accrue until a person is at liberty to bring a claim. The *North Carolina Insurance Guaranty* court pointed out that the insureds in that case were not at liberty to assert a UM claim based on the "insolvency of the tortfeasor's insurer until the date that [the insurer] was declared insolvent." *Id.* at 673, 446 S.E.2d 364,. The court reasoned that since the insured's right to bring a UM claim could not have accrued until the tortfeasor's insurer declared insolvency, the date of the underlying accident could not be the triggering event for the statute of limitations. Certainly, this logic would seem to apply just as well to

---

11. State Farm also argued that the UM statute's insolvency provision, section 20–279.21(b)(3)(b), barred recovery because it imposed a three-year deadline after the accident for bringing a UM claim in the case of insolvency. The court rejected this argument for reasons that the court need not discuss here.

the facts in this case, in which Cockman was not at liberty to bring his UM claim until Travelers denied coverage to the Thompsons.[12]

In other words, as it stands, applying the three-year statute of limitations rule of *Fulton* and *Thomas* to the particular facts in this case will leave Defendant Cockman in a classic Catch 22 scenario.[13] That is, in order for Defendant Cockman to have made a timely UM claim against Netherlands Insurance, Defendant Cockman would have had to bring the claim by October 27, 2002, which was the three year statute-of-limitations deadline established by the October 27, 1999, accident. Cockman could not file a UM claim with Netherlands Insurance, however, until he discovered that there was no insurance coverage for the car involved in the accident. Cockman discovered that Thompson had no insurance coverage around January 29, 2003, when Travelers notified the Thompsons that the car was not covered under the policy and that Travelers would no longer participate in the defense in the state court lawsuit. Until that point, Cockman was not legally entitled to recover UM benefits from Netherlands because until that point neither Defendant Carrie Thompson nor her daughter Amy Thompson met the definition of an "uninsured motorist" under Netherland's policy

or under section 20–279.21(b)(3). Indeed, from sometime after June 26, 2002, until around January 29, 2003, Travelers participated in the defense in the personal injury lawsuit brought by Cockman against the Thompsons. Travelers' active participation in the defense clearly indicated to all that Cockman had a UIM claim rather than a UM claim against Netherlands Insurance. Thus, had Defendant Cockman pursued a UM claim against Netherlands Insurance at any time before January 29, 2003, Netherlands Insurance certainly would have denied the claim. Thus, the strange paradox in which Cockman finds himself is this: Cockman's right to file a UM claim expired before his right to file the UM claim ever accrued.

I note that the North Carolina Supreme Court very recently discussed a similar paradox in a case involving UIM coverage in which the plaintiff sought arbitration on her UIM claim. *See Register v. White,* 358 N.C. 691, 599 S.E.2d 549 (2004). In *Register v. White,* the plaintiff Melissa Register was injured in an automobile accident on June 30, 1998, while riding in a vehicle driven by Steve White and owned by his father Jimmy White. The plaintiff's father Terry Register owned a policy of insurance issued by North Carolina Farm Bureau Mutual Insurance Company ("Farm Bureau"), which provided UIM

---

**12.** To support his argument that the accident was not the triggering event for the statute of limitations, Cockman also points to *Jones v. North Carolina Insurance Guaranty Assoc.,* 163 N.C.App. 105, 592 S.E.2d 600 (2004), but I find that the issues in *Jones* are not applicable to the facts in this case.

**13.** The phrase "Catch 22" is from Joseph Heller's novel by the same name:

There was only one catch and that was Catch–22, which specified that a concern for one's own safety in the face of dangers that were real and immediate was the process of a rational mind. Orr was crazy and could be grounded. All he had to do was

ask; and as soon as he did, he would no longer be crazy and would have to fly more missions. Orr would be crazy to fly more missions and sane if he didn't, but if he was sane he had to fly them. If he flew them he was crazy and didn't have to; but if he didn't want to he was sane and had to. Yossarian was moved very deeply by the absolute simplicity of this clause of Catch–22 and let out a respectful whistle.

"That's some catch, that Catch–22," he observed. "It's the best there is," Doc Daneeka agreed.

JOSEPH HELLER, CATCH–22, at 47 (6th ed.1976).

coverage to Register. On July 28, 2000, the plaintiff brought a personal injury lawsuit against Steve White. On September 5, 2000, Farm Bureau filed a request for monetary relief sought. On or about September 20, 2000, Farm Bureau filed an answer generally denying liability. On August 8, 2001, Jimmy White's liability carrier State Farm tendered its liability limits. In a letter to Farm Bureau dated September 24, 2001, the plaintiff demanded arbitration under the UIM provision in Register's insurance policy with Farm Bureau. About two weeks later, Farm Bureau sent the plaintiff a letter, taking the position that the plaintiff's right to arbitrate was time-barred because the arbitration provisions in the policy required her to request arbitration within a three-year statute of limitations, which Farm Bureau contended began on June 30, 1998, the date of the accident leading to the personal injury lawsuit.[14] The state trial court agreed, holding that the plaintiff was barred by the three-year statute of limitations in the policy's arbitration provisions.

On appeal, the North Carolina Court of Appeals reversed and remanded with instructions to enter an order compelling arbitration. 160 N.C.App. 657, 587 S.E.2d 95 (2003). The court of appeals agreed that a three-year statute of limitations applied to the plaintiff's right to demand arbitration, but concluded that the limitations period had not expired at the time the plaintiff had made such demand. The court noted that if the June 30, 1998, wreck was the event triggering the statute of limitations for arbitration, the statute of limitations would have expired three years later on June 30, 2001. The court observed, however, that because the plaintiff

had no right to seek UIM coverage before August 8, 2001, when State Farm tendered its liability limits, her right to demand arbitration to resolve the UIM dispute could not expire before that date. *Id.* at 662, 587 S.E.2d at 98 ("Moreover, '[i]n no event can the limitations period begin to run until the injured party is at liberty to sue.'") (quoting *Glover v. First Union Nat'l Bank*, 109 N.C.App. 451, 455, 428 S.E.2d 206, 208 (1993)). The court of appeals concluded that the arbitration "time limit" provided a three-year limitations period that began on the date the plaintiff acquired the contractual right to demand arbitration, which was August 8, 2001, and the plaintiff's demand for arbitration was, therefore, within the contractual time limit.

On petition for discretionary review, the North Carolina Supreme Court affirmed. *Register*, 358 N.C. 691, 599 S.E.2d 549. The Supreme Court observed that "if the three-year 'time limit' referenced in the arbitration provision is deemed to commence at the time of an insured's injury, the right to demand arbitration may expire—paradoxically—before it ever accrues." *Id.* at 555. The court specifically rejected such a "paradoxical construction" of the arbitration provision at issue. *Id.* at 556. Thus, the Supreme Court held that the policy's three-year limit to request arbitration in the UIM dispute began to run when the driver's liability carrier tendered its policy limits, not when the accident occurred.

The point of this long-winded discussion of North Carolina case law is the following: the particular facts of this case raise issues that are "close," "difficult," or "problemat-

---

**14.** The relevant arbitration provisions under the policy stated that "[a]ny arbitration action against the company must begin within the time limit allowed for bodily injury or death actions in the state where the accident occurred." *See Register*, 599 S.E.2d at 552.

Farm Bureau argued that the arbitration provision's "time limit allowed for bodily injury or death actions" incorporated by reference North Carolina's statute of limitations for bodily injury actions, set forth in N.C. GEN. STAT. § 1–52(16) (2003).

ic" under North Carolina law. The North Carolina courts do not appear to have addressed a situation in which the plaintiff missed the statute of limitations for bringing a UM claim because the tortfeasor's insured denied coverage only after the statute of limitations had run. Considering the North Carolina Supreme Court's analysis in *Register,* and under the logic of *North Carolina Insurance Guaranty,* it is not clear whether North Carolina courts would hold that the triggering event for the statute of limitations for Cockman's UM claim was the date of the accident.

Furthermore, it is not clear under current North Carolina law whether equitable principles of estoppel or tolling should apply when considering the particular facts of this case. First, as for Cockman's alternative argument that the statute of limitations should be tolled, this court finds no North Carolina case allowing for the equitable tolling of the three-year statute of limitations in the context of UM claims. As for Cockman's alternative argument that Travelers should be estopped from denying coverage, as a general rule under North Carolina law estoppel may not be used "to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded therefrom." *Currie v. Occidental Life Ins. Co.,* 17 N.C.App. 458, 459–60, 194 S.E.2d 642, 643 (1973). North Carolina courts recognize an exception to this general rule, however, where an insurer defends its insured without a reservation of its right to deny coverage and where the denial results in prejudice to a party. *Fortune Ins. Co. v. Owens,* 351 N.C. 424, 431, 526 S.E.2d 463, 467 (2000); *Early v. Farm Bureau Mut. Auto. Ins. Co.,* 224 N.C. 172, 174, 29 S.E.2d 558, 559–60 (1944) ("[T]he insurer having come in and assumed charge of the defense in the action of the plaintiff [without a reservation of its rights to deny coverage] and continued in charge of such defense until an adverse judgment was rendered against the insured, ... the insurer cannot now be heard to deny liability ...."); *Nationwide Mut. Ins. Co. v. Aetna Cas. & Sur. Co.,* 1 N.C.App. 9, 13, 159 S.E.2d 268, 272 (1968) (noting that estoppel may be found where "the insurer, having knowledge of facts which would result in noncoverage, nevertheless assumes and conducts the defense of an action brought against its insured" without reserving its right to deny coverage).

Here, both Netherlands Insurance and Cockman contend that Cockman's failure to meet the statute of limitations was wholly caused by Travelers' conduct. They note, for instance, that Travelers actively defended against the alleged tortfeasors Amy Thompson and Carrie Thompson up until January 29, 2003, and that Defendant Travelers elected to defend the claim without reserving its right to assert the defense of noncoverage. Indeed, there is no reservation of rights letter in the record, and nowhere in its pleadings does Travelers assert that it reserved its right to assert the defense of noncoverage. Furthermore, Netherlands Insurance and Cockman assert that Travelers had all of the information it needed to make the noncoverage determination at least seven months before it notified the Thompsons of noncoverage.[15] Travelers has offered no explanation as to why it took so long to determine that the automobile involved in the accident was not covered under the policy with Carrie Thompson. Certainly,

---

**15.** Plaintiff Netherlands Insurance argues that Travelers was surely aware of the October 27, 1999, accident well before June 26, 2002 (the date it was notified of the lawsuit), and that "[a] simple review of the vehicle description on the police accident report and the applicable Defendant Travelers' policy would have provided the coverage answer in a matter of moments." *See* Pls.' Mem. Resp. Opp. Def. Travelers' Mot. Summ. J., at 6.

Travelers' conduct of actively participating in the defense and waiting so long before informing Defendants Amy Thompson and Carrie Thompson that they were not insured prejudiced Cockman by preventing him from filing a UM claim before the expiration of the three-year statute of limitations.

Netherlands Insurance and Cockman both argue, therefore, that Travelers should be stopped from denying coverage. Netherlands Insurance and Cockman suggest that this court should exercise its "equitable" powers and find that Defendant Travelers has coverage in an amount equal to the amount that would have been available under Netherlands Insurance's UM policy. While this sounds like a fair and equitable result, this issue is one that the North Carolina courts have a particular interest in resolving. As this lengthy discussion demonstrates, the facts in this case simply present problematic issues under North Carolina's laws regarding UM coverage. This federal court certainly has less interest, and is in no better position, than the North Carolina state courts to resolve the thorny issues raised by the facts in this case and to determine whether equitable principles should be applied to prevent injustice. As this circuit's court of appeals has stated, "[a]bsent a strong countervailing federal interest, the federal court should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law." *Mitcheson,* 955 F.2d at 238 (internal quotation marks omitted); *see also Aetna Cas. & Sur. Co. v. Alpha Mech., Inc.,* 9 F.Supp.2d 585, 588 (W.D.N.C.1998) ("This case . . . raises important issues of unclear state law in which the State of North Carolina has an important interest. . . . . Under these circumstances . . . the Court finds that the courts of the State of North Carolina should decide this issue."); *see also Ind–Com,* 139 F.3d at 423 (stating that the existence of a pending state-court action is an important consideration in determining whether to decline jurisdiction). In sum, I find that this factor weighs heavily against this court exercising jurisdiction.

*2. Whether the issues raised can be more efficiently resolved in a state court action.*

I further find that the North Carolina state court can resolve more efficiently than this court the UM coverage issue raised here. The state court personal injury action is not removable because diversity of citizenship is lacking, and the lawsuit involves purely state law issues. Thus, this court has no jurisdiction to resolve the tort issues raised in the state court lawsuit, whereas the UM coverage issue raised here, along with the underlying state tort issues, were already pending in the state court when Netherlands Insurance brought this declaratory judgment action. Thus, the North Carolina state court is the only court with the jurisdictional power to resolve all facets of this controversy, thus weighing against this court's exercise of jurisdiction. *See Mitcheson,* 955 F.2d at 239.

*3. Whether permitting the action to go forward would result in unnecessary "entanglement" between the federal and state courts.*

As to the entanglement of the federal and state court systems, any decision that this court makes regarding UM coverage will preclude the parties from relitigating the issue in the state court action. Indeed, Netherlands Insurance no doubt brought this declaratory judgment action precisely *because* a ruling by this court on the UM coverage issue would be binding in the state court action. Thus, there is a clear threat of unnecessary entanglement between the state and federal courts in this

case, and this factor weighs against this court exercising its jurisdiction.

### 4. Whether the federal action is being used merely as a device for procedural fencing.

Finally, procedural fencing does appear to be an element in this case. Again, when Netherlands Insurance filed this action discovery had already been conducted in the non-removable state court lawsuit, and the UM coverage issue was pending in the form of a motion for summary judgment filed by Netherlands Insurance. Furthermore, Netherlands Insurance waited until two years after the state court lawsuit was commenced to bring a declaratory judgment action in this court. This case is factually similar to *Continental Casualty Co. v. Fuscardo,* where a UM carrier brought a declaratory judgment action in federal court while a state court lawsuit was pending between the carrier's insured and an alleged tortfeasor. 35 F.3d at 966. The district court declined to exercise jurisdiction and dismissed the case. On appeal, this circuit's court of appeals upheld the district court's dismissal, noting that although none of the insurance issues raised in the declaratory judgment action were being litigated in the state court personal injury action when the declaratory judgment was filed, and although the issues of state law were relatively settled, dismissal was appropriate because (1) the state courts had an interest in resolving issues of substantive state law in state court; (2) there was a likelihood that the UM carrier filed the action in federal court to acquire the most hospitable forum; and (3) efficiency warranted resolving issues in the context of the pending state proceeding. *Id.* at 967–69; *see also Beach Cove Assocs.,* 903 F.Supp. at 963 (discussing *Continental Casualty Co.*). Here, the factors weigh even more heavily in favor of declining jurisdiction than in *Continental Casualty Co.* because here the state law at

issue is somewhat unsettled, problematic, and difficult. Furthermore, unlike in *Continental Casualty Co.,* where the coverage issues were not pending in the state court when the party brought a declaratory judgment action in federal court, here the coverage issues were already pending in the state court action. In sum, I find that there is some element of procedural fencing in this case, and this factor weighs against the court's exercise of jurisdiction.

### Conclusion

**FOR THE FOREGOING REASONS,** it is recommended that the court DISMISS this declaratory judgment action without prejudice to the parties to litigate in the pending state court action the insurance coverage issues raised here. If the court adopts this recommendation Plaintiff's motion to dispense with mediation will be rendered moot.

Sept. 20, 2004.